# OAKRIDGE COMMUNITY AMBULANCE SERVICE, INC., *Appellant,*

## *v.*

# UNITED STATES FIDELITY AND GUARANTY COMPANY, *Respondent.*

## (No. 75-2370, SC No. 24338)

563 P2d 164

Arthur C. Johnson, Eugene, argued the cause for appellant. With him on the briefs were Charles G. Duncan, and Johnson, Harrang & Mercer, Eugene.

Edward V. O'Reilly, Eugene, argued the cause and filed a brief for respondent.

HOLMAN, J.

## HOLMAN, J.

This is an action by an ambulance service (insured) against its automobile liability insurance carrier (insurer) to recover expenses and reasonable attorney fees incurred in defending a wrongful death action. Judgment was entered for insurer after its demurrer to insured's complaint was sustained and insured refused to plead further. Insured appeals.

The policy included the following provisions:

"[Insurer agrees to] pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and *arising out of the ownership, maintenance or use of the automobile.*

"* * * * *.

"[Insurer shall] defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent."

"The words 'caused by accident' * * * are amended to read 'caused by occurrence.'

"* * * * *.

" 'Occurrence' means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (Emphasis ours.)

Insured was sued by the estate of one Albert A. Laskey. According to insured's complaint, the estate's complaint alleged that Laskey was injured in a logging accident and died while being transported in insured's ambulance and that

"* * * Albert Laskey's death * * * resulted from Oakridge Community Ambulance Inc.'s failure to have an ambulance at the scene of the accident within a reasonable period of time; its failure to accurately receive directions to the scene of the accident and its failure to accurately relay directions to the ambulance

drivers; its failure to use or have any reasonable procedure to check the accuracy of directions and information received describing the location of an accident; and its failure to use or have any reasonable procedure to insure that adequate and accurate directions to the location of an accident were given to or received by the ambulance driver so that he could drive to the accident scene within a reasonable length of time. The claim for damages was within the coverage of the above described insurance policy in that it was alleged that the claim arose out of Plaintiff's ownership, maintenance and use of the ambulance insured by Defendant."

Insured tendered defense of the Laskey action to insurer. Insurer refused the tender, and insured successfully defended the action at its own expense. After disposition of the Laskey action, insured brought this action to recover expenses and reasonable attorney fees.

■ Insured's duty to defend depends on two documents: (1) the insurance policy, and (2) the Laskey complaint. "If the complaint [against insured], without amendment, may impose liability for conduct covered by the policy, the insurer is put on notice of the possibility of liability and it has a duty to defend." *Ferguson v. Birmingham Fire Ins.,* 254 Or 496, 507, 460 P2d 342 (1969). "The insurer's knowledge of facts not alleged in the complaint is irrelevant in determining the existence of the duty to defend * * *." *Id.* at 505. "[I]f the complaint is ambiguous or unclear and may be reasonably interpreted to include an incident within the coverage of the policy, there is a duty to defend." *Blohm et al v. Glens Falls Ins. Co.,* 231 Or 410, 416, 373 P2d 412 (1962). "[T]he insurer owes a duty to defend if the injured claimant can recover under the allegations of the complaint upon any basis for which the insurer affords coverage." *Casey v. N. W. Security Ins. Co.,* 260 Or 485, 489, 491 P2d 208 (1971).

■ The general rule for the interpretation of the words of the policy which are critical to the disposition of this

controversy is set out in 7 Appleman, Insurance Law and Practice 144, § 4317, as follows:

"It has been stated that the liability of an insurer under the 'ownership, maintenance, or use' provision should be measured in accord with the terms of a policy as understood by a person of reasonable intelligence. Although ownership, maintenance, or use of the automobile need not be the direct and efficient cause of the injury sustained, liability does not extend to results distinctly remote, though within the line of causation. The words 'arising out of' when used in such a provision are of broader significance than the words 'caused by', and are ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle * * *." (Footnotes omitted.)

Even when the rule which governs a decision of the present kind is recognized, the task is not much easier. The problem is the requisite causal connection[1] between the injury or death and the "ownership, maintenance or use of the automobile" which is necessary for coverage when viewed "as understood by a person of reasonable intelligence." This is simply another situation in which there exists a continuum of causal connection upon which we are going to have to locate the factual situation alleged in the Laskey estate's complaint, as described in insured's complaint. On one end of the continuum is the situation in which insured's ambulance while being negligently driven hits and injures a party. On the other end is the situation in which a potential customer, upon entering insured's place of business to order an ambulance to take his sick mother to the hospital, trips over a negligently arranged rug and breaks his leg. Coverage would exist as a matter of law in the first situation. In the latter situation, however, coverage as a matter of law does not exist, despite the causal connection between the broken leg and the "ownership, maintenance or use" of the ambulance. Granted, had it not been for insured's ownership, maintenance and use of the ambulance, the customer would not have been in

---

[1]By "causal connection" we do not mean "proximate cause."

insured's office to order an ambulance for his mother and would not have broken his leg; nonetheless, the causal connection would be too attenuated to afford coverage. In any situation where the insured's sole business is the operation of the insured vehicle or vehicles, almost any activity necessarily will be causally connected with the ownership, maintenance or use of such vehicle or vehicles.

We have discovered only one similar case. In *Employers' Commercial Union Insurance Company of America v. Danches,* 311 So2d 758 (Fla App 1975), the court held that delay on the part of an ambulance company in delivering a patient to the hospital, which delay caused the patient's death, was not within the coverage of a similarly worded policy. The report of the case does not disclose the reason for the delay. It is surprising that there is not more law on similar situations, since the language in question is common to almost all automobile liability policies. Two cases exist wherein the plaintiff suffered injuries from being dropped by ambulance attendants using ambulance equipment in the course of transporting the plaintiff from her residence to the ambulance parked in the street. In the one case coverage was afforded, *Owens v. Ocean Acc. & Guar. Corp.,* 194 Ark 817, 109 SW2d 928 (1937); in the other, it was denied, *J. T. Hinton & Sons v. Employers' Liability Assur. Corp.,* 166 Tenn 324, 62 SW2d 47 (1933). In the case allowing coverage, the policy contained coverage for loading and unloading, whereas in the case denying coverage there was no such provision. However, neither decision seems to have been based upon a consideration of such provision.

■ Insured has diligently searched the United States for opinions which have afforded coverage under similar language in causally attenuated cases. However, for almost every such opinion, one can be found in which similar facts resulted in a contrary ruling. For reports of cases, see annotations to 7 Appleman, Insurance Law and Practice § 4317 *et seq.,* and

Annotation, 89 ALR2d 150 (1963). Case-matching in the present situation is singularly futile. We conclude that errors in organization and in receiving and transmitting directions are not risks of the kind which the parties contemplated would be covered by the policy. Although such risks would not exist except for insured's ownership, maintenance and operation of the ambulance and the causal relation stemming therefrom, they are risks which are more closely related to insured's operation of its *business* than to insured's operation of its *ambulance.*

■ Insured contends, however, that the Laskey estate could also have introduced evidence under its complaint that insured's failure to respond within a reasonable time was due to its negligence in the manner in which the ambulance was maintained or operated, which negligence, in turn, caused the vehicle to break down or to be involved in an accident on the way to pick Laskey up to take him to the hospital. Our knowledge of the contents of the Laskey complaint is limited to that which insured alleges in its complaint. It has been pointed out to us that an allegation was made by insured that the Laskey complaint alleged that the death resulted from insured's "failure to have an ambulance at the scene of the accident within a reasonable period of time" and that such a general allegation is broad enough to permit evidence of the specified kind. In the absence of a motion against the Laskey complaint to make this allegation more definite and certain, we believe insured is correct. We must therefore consider whether coverage would result if such facts were proved.

■■ If, after Laskey had been picked up and was on the way to the hospital, the ambulance broke down or was involved in an accident due to insured's negligence and Laskey died as a result of the delay, we certainly would have no difficulty in saying that there was sufficient causal connection between Laskey's death and insured's negligent maintenance or use of its ambulance to make the death one "arising out of the

* * * maintenance or use of the automobile," as that language would be "understood by a person of reasonable intelligence." In considering whether Laskey's death "arose out of" insured's maintenance or use of its ambulance, we are unable to distinguish the situation in which the ambulance breaks down or has an accident on its way to pick up Laskey, from the situation in which a similar mishap occurs after he is in the ambulance. In both situations Laskey's death would seem to be equally and directly causally connected with the maintenance or use of the ambulance. We therefore conclude that under the Laskey complaint liability could have been imposed upon insured for conduct covered by the policy and that the trial court erred in sustaining the demurrer to insured's complaint.

The judgment of the trial court is reversed, and the case is remanded to the trial court for further proceedings.