Argued and submitted July 1, affirmed November 20, 1985, reconsideration denied January 24, petition for review denied February 11, 1986 (300 Or 545)

# JORDAN,
*Appellant,*

v.

# LEE et al,
*Respondents.*

## (82-1145C; CA A33875)

709 P2d 752

Ben Shafton, Vancouver, Washington, argued the cause for appellant. With him on the briefs were Lois I. Beran, Portland, and John E. Morse, Vancouver, Washington.

James C. Tait, Oregon, City, argued the cause for

respondents. With him on the brief was Canning, Tait & McKenzie, P.C., Oregon City.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Rossman, J., dissenting.

## WARREN, J.

Plaintiff appeals from a judgment entered after the parties submitted their controversy to the trial court, as provided by ORCP 66.[1] The court determined that insurance coverage for plaintiff's injuries was not available to defendants Lee under an automobile liability policy issued by defendant Preferred Risk Mutual Insurance Company (Preferred Risk). The issue is whether the court erred in that determination. We affirm.

One evening in June, 1980, the Lees and their seven-year-old daughter Kristina arrived at a lake with their pickup truck and trailer for a weekend of camping. As was his custom, Mr. Lee brought his .44 Magnum handgun on the trip. Shortly after arriving, he loaded the gun and stored it within the trailer's unfolded upper bunk.

The next morning, the Lees were joined by David and Marsha Reynolds and plaintiff, Cerena Jordan, who was two years old at the time.[2] In the early afternoon, Kristina and Cerena were put down for a nap in the trailer. A short time later, Kristina got the gun down and accidentally shot plaintiff in the leg.

On the day of the accident the Lees had an automobile liability insurance policy issued by Preferred Risk. Under the policy Preferred Risk agreed:

"To pay on the behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"A. bodily injury, sickness or disease including death resulting therefrom, hereinafter called 'bodily injury,' sustained by any person;

"* * * * *

---

[1] ORCP 66 provides, in part:

"Parties to a question in controversy, which might have been the subject of an action with such parties plaintiff and defendant, may submit the question to the determination of a court having subject matter jurisdiction."

[2] Cerena Jordan is the daughter of Marsha Reynolds and Jay Jordan, the guardian ad litem. At the time of the accident Marsha Reynolds was named Marsha Jordan. David Reynolds, who is now married to Marsha, is the brother of Mrs. Lee.

"arising out of the ownership, maintenance or use of the owned automobile * * *."

The policy defined the Lees' trailer as an automobile.

To resolve this controversy, we must interpret the provision "arising out of the ownership, maintenance or use of the owned automobile," which is a common one in automobile liability policies. In *Oakridge Comm. Ambulance v. U. S. Fidelity,* 278 Or 21, 24-25, 563 P2d 164 (1977), the Supreme Court adopted the generally accepted rule for interpreting the provision. According to the *Oakridge* court, the words "arising out of" have a broader meaning than that usually attached to the words "caused by." For there to be coverage, the ownership, maintenance or use of the vehicle need not be the direct or legal cause of the injury. However, neither can the injury be unrelated to the use of the vehicle. The injury must originate from, be incident to or have a connection with the use of the vehicle.

Addressing a threshold issue, plaintiff first contends that using the trailer as a place for children to nap, and as a place to store a gun, are uses covered by the policy. We accept that contention. Plaintiff then contends that the injury originated from, was incident to and had a connection with those uses. With that contention we do not agree.

■ ■ The relationship between the trailer's uses as a sleeping place for children and as a place to store a gun and the accident was fortuitous. Those uses played no role in causing the accident. True, had the two uses, providing place and means for the accident, not concurred, the accident would not have happened. Nevertheless, the accident was not the result of the two uses; rather, it was the result of Kristina handling the gun, an act independent of the trailer's use. We hold that an injury does not arise out of the use of an automobile when, as here, it was directly caused by some act wholly disassociated from and independent of the vehicle's use.[3]

---

[3] The dissent makes an argument that shows at most that the Lees could be found liable to plaintiff. In the process, however, it demonstrates why there is no coverage under the policy. The dissent points out that given the loaded gun and unsupervised children, the accident was foreseeable and concludes that coverage follows. Foreseeability, however, is a liability concept that is not relevant to determining the coverage question: did the injury arise out of a covered use? As the dissent points out, "the older girl took the gun from its storage place and accidentally fired it." It is evident that the covered uses were not connected in any causal way with the accident.

Plaintiff has cited a number of cases involving the discharge of weapons in automobiles in which coverage was found. *See Ohio Farmers Ins. Co. v. Landfried,* 348 F Supp 486 (WD Pa 1972); *Payne v. Southern Guaranty Co.,* 159 Ga App 67, 282 SE2d 711 (1981); *Reliance Ins. Co. v. Walker,* 33 NC App 15, 234 SE2d 206 (1977); *Travelers Ins. Co. v. Aetna Casualty & Surety Co.,* 491 SW2d 363 (Tenn 1973). Those cases, however, are factually distinguishable from the case here. In *Ohio Farmers,* an opinion which we find unpersuasive, the court stated that its decision was controlled by the fact that the weapon discharged in a police car; *Travelers* was determined by the fact that the weapon was being loaded into the vehicle, which was a covered use under the policy; in *Reliance* and in *Payne* the weapons discharged without human intervention. In any event, the provision we are interpreting has been involved in so much litigation that "for every such opinion [supporting one party's position] one can be found in which similar facts resulted in a contrary ruling * * *." *Oakridge Comm. Ambulance v. U. S. Fidelity, supra,* 278 Or at 26. In such a circumstance, "[c]ase matching * * * is singularly futile." 278 Or at 27. *See Annot.,* 15 ALR4th 10 (1982) for examples of the diversity of decisions under similar facts.

The majority of courts have held that the accidental discharge of a gun inside a vehicle while an occupant is handling the gun is not covered under an ownership, maintenance or use provision; the courts have reasoned that an insufficient causal relationship exists between the accident and the use of the vehicle. *See State Farm Mutual Auto. Ins. v. Smith,* 107 Idaho 674, 691 P2d 1289 (1984)(and cases cited therein). We agree with that reasoning and, therefore, affirm.

Affirmed.[4]

**ROSSMAN, J.,** dissenting.

Because I believe that plaintiff has demonstrated that the shooting was sufficiently related to the use of the camper to establish policy coverage, I respectfully dissent.

---

[4] Plaintiff also argues that the injuries arose from the Lee's ownership of the trailer. That argument has no merit, because plaintiff's theory of liability is based on the Lee's use of the trailer, not on their ownership of it. To the extent that plaintiff equates use and ownership, as her argument seems to do, the causal connection is also insufficient to afford coverage.

The case is a difficult one analytically, as cases often are when the issue of "causation" must be decided. As the majority has pointed out, in interpreting the relevant insurance provisions:

"'* * * [T]he words 'arising out of' have a broader meaning than that usually attached to the words 'caused by.' For there to be coverage * * * use of the vehicle need not be the direct or proximate cause of the injury. However, neither can the injury be unrelated to the use of the vehicle. The injury must originate from, be incident to or have a connection with the use of the vehicle." 76 Or App at 475.

That interpretation, however, is still rather abstract and leaves us without much guidance to what *"incident to or have a connection with the use"* really means. But we are not totally without guidance. General insurance law provides at least *some* specific, concrete rules. One of those rules provides:

"The courts, in construing the words 'arising out of the ownership, maintenance or use' in an automobile liability insurance policy, must apply the same principles which are applied in interpreting insurance contracts generally; that is, if a policy is susceptible to more than one construction, it will be construed in a manner most favorable to the insured and words used therein will be given their natural and usual meaning unless otherwise defined in the insurance contract." *Annot.,* 15 ALR4th 10 (1982).

*See Western Fire Insurance Co. v. Wallis,* 289 Or 303, 613 P2d 36 (1980); *O'Neill v. Standard Insurance,* 276 Or 357, 361, 554 P2d 997 (1976); *Mortgage Bancorp. v. New Hampshire Ins. Co.,* 67 Or App 261, 677 P2d 726, *rev den* 297 Or 339 (1984).

Trailer-campers, unlike cars, are primarily used for the transportation and storage of equipment and to provide protection from the elements and living accommodations away from home. They are unique in that functions such as eating, sleeping and storage of equipment normally carried on in separate rooms at home are carried out in a single room and in very close proximity to each other. Here, the gun was kept for protection from animals and intruders; it was stored in the upper bunk or rack area of the camper-trailer. The camper was equipped with bathroom, cooking and sleeping facilities—a one room "home away from home."

According to the record, the two young children were

put down for a nap in the camper and left unattended by the adults. The younger child did not want to sleep in the camper, because she was afraid that there were bears in the forest. The older child told her not to be afraid, because there was a gun in the room. Curiosity got the better of the children. The older girl took the gun from its storage place and accidentally fired it.

It seems apparent to me that the accident would not have occurred unless the gun and the unsupervised children had not been placed in such close proximity. Given the facts that the gun was being stored in the camper for protection from animals and intruders and that the children—"afraid of bears"—were in the camper for the purpose of a nap, I would hold that the accident was "incident to, or connected with the use" of the camper. The unfortunate convergence of these two uses of the camper was sufficient to establish the connection necessary for insurance coverage.

For this reason, I respectfully dissent.