Argued and submitted October 21, 1992, affirmed June 23, reconsideration denied
September 15, petition for review denied October 26, 1993 (318 Or 26)

# WORLDWIDE UNDERWRITERS
# INSURANCE COMPANY,
a foreign corporation,
*Respondent,*

*v.*

# Clarence JACKSON, Sr.,
*Appellant.*

# (9101285CV; CA A73535)

855 P2d 166

Jeffrey C. Wing, Eugene, argued the cause for appellant. With him on the briefs was Coons, Cole & Cary, Eugene.

Barbara M. DiIaconi, Klamath Falls, argued the cause for respondent. With her on the briefs was Boivin, Jones, Uerlings & DiIaconi, Klamath Falls.

Before Richardson, Chief Judge, and Deits and Durham, Judges.

DEITS, J.

Durham, J., dissenting.

**DEITS, J.**

Defendant was wounded by a gunshot fired from a passing motor vehicle. Neither the driver, the assailant nor the vehicle were identified or apprehended. Plaintiff, defendant's automobile insurer, brought this declaratory judgment action, contending that defendant's injury does not come within its coverage. Defendant contends that the injury comes under the uninsured motorist coverage of the policy, which insures defendant against injuries that "arise out of the ownership, maintenance or use" of uninsured vehicles. The trial court granted plaintiff's motion for summary judgment, holding that the injuries were not subject to the provision as a matter of law. Defendant appeals, and assigns error to that ruling. We affirm.

As defendant asserts, the precise question presented by this case has not previously been addressed by the Oregon appellate courts. However, an analogous issue was decided in *Jordan v. Lee*, 76 Or App 472, 709 P2d 752 (1985), *rev den* 300 Or 545 (1986). In that case, the minor plaintiff was injured while napping with another child, Kristina, in a trailer owned by Kristina's parents. The injury occurred when Kristina handled a gun that was stored in the trailer and accidentally shot the plaintiff.

In *Jordan*, the trailer was a covered "automobile" under Kristina's parents' automobile policy which, like the policy provision in this case, insured against injuries "arising out of the ownership, maintenance or use" of an owned automobile. The plaintiff claimed that that provision covered her injury. We agreed with the plaintiff's contention that the use of the trailer as a place for children to nap and to store the gun was within the policy's coverage. We concluded, however:

"Plaintiff then contends that the injury originated from, was incident to and had a connection with those uses. With that contention we do not agree.

"The relationship between the trailer's uses as a sleeping place for children and as a place to store a gun and the accident was fortuitous. Those uses played no role in causing the accident. True, had the two uses, providing place and means for the accident, not concurred, the accident would not have happened. *Nevertheless, the accident was not the result of the two uses; rather, it was the result of Kristina*

*handling the gun, an act independent of the trailer's use. We hold that an injury does not arise out of the use of an automobile when, as here, it was directly caused by some act wholly disassociated from and independent of the vehicle's use."* 76 Or App at 475. (Emphasis supplied; footnote omitted.)

Defendant argues that this case differs, *inter alia*, in that the vehicle was "used" by the assailants to "launch their assault" and to avoid detection. Defendant concludes that it "was not some mere fortuity that the assailants happened to be in a vehicle when the assault occurred"; rather, unlike in *Jordan v. Lee, supra,* the necessary relationship between the use of the vehicle and the injury was present here. *See Oakridge Comm. Ambulance v. U.S. Fidelity,* 278 Or 21, 563 P2d 164 (1977). We disagree.

The parties place extensive reliance on decisions from other jurisdictions. Suffice it to say that different courts have answered analogous questions differently, and we agree with the dissent that "case matching is not always productive." 121 Or App at 299. In our view, however, our reasoning in *Jordan v. Lee, supra,* is dispositive. The question is whether the injury resulted from "some act wholly disassociated from and independent of the vehicle's use." Here, as in *Jordan,* the firing of the gun was such an act. It is immaterial that the vehicle may have facilitated the shooting and the escape. Its use was not the "direct cause" of the shooting. We agree with the trial court that, as a matter of law, the policy does not cover defendant's injury.

The dissent's reliance on *Oakridge Comm. Ambulance v. U.S. Fidelity, supra,* and its efforts to distinguish *Jordan* are not persuasive. Immediately after stating the rule of interpretation that the dissent quotes, 121 Or App at 297-98, the court said in *Oakridge*:

"Even when the rule which governs a decision of the present kind is recognized, the task is not much easier. The problem is the requisite causal connection[1] between the injury or death and the 'ownership, maintenance or use of the automobile' which is necessary for coverage when viewed 'as understood by a person of reasonable intelligence.' This is simply another situation in which there exists a continuum of causal connection upon which we are going to have to locate the factual situation alleged * * *.

"[1] By 'causal connection' we do not mean 'proximate cause.'" 278 Or at 24.

As we did in *Jordan*, the court in *Oakridge* made it clear that causation and remoteness are questions that bear on whether the policy language applies. In this case, there is no doubt that the use of the assailant's vehicle was "within the line of causation" of the injury. In our view, however, the injury was also "remote" from the use of the vehicle, within the meaning of Appleman's language that the court in *Oakridge* and the dissent quote. We do not understand *Oakridge* to mean anything different from the test we articulated in *Jordan*: Coverage depends on whether the injury "was directly caused by some act wholly disassociated from and independent of the vehicle's use."

The dissent faults us for stating that the use of the vehicle was not the direct cause of the shooting and maintains that that statement is contrary to *Oakridge*. However, "direct cause" is part of the *Jordan* test. Moreover, the dissent disregards the context in which that statement appears. It follows from the preceding language:

> "The question is whether the injury resulted from 'some act wholly disassociated from and independent of the vehicle's use.' Here, as in *Jordan*, the firing of the gun was such an act." 121 Or App at 295.

The dissent seems to posit that the tests stated in *Jordan* and *Oakridge* can be separated into component parts. We disagree. If the act that does directly cause the injury is "remote" or "wholly disassociated from and independent of the vehicle's use," then it is of decisive importance under the two cases that that act, rather than the use of the vehicle, is the directly causal event. Hard as it might try, the dissent cannot excise the word "directly" from *Jordan*.

We are unable to discern how the dissent derives its pivotal conclusion that

> "*Jordan* is distinguishable because, in that case, the travel trailer was merely the site where the injury occurred, whereas the driver used the vehicle in this case to approach defendant, inflict the injury and escape." 121 Or App 298.

It is true that there are *factual* differences, but they are not *legally* distinguishable. As noted, we said in *Jordan* that the activities that took place there — storage of the gun and a locale for the children's naps — were "uses" that the policy covered. So, here, was the driver's operation of the vehicle. The critical fact that the cases have in common, however, is that the injuries were directly caused by the use of a gun. Under the dissent's reasoning, coverage would depend on a fortuity: Defendant would be entitled to coverage under the facts as they stand, but would not be if the assailants were acquaintances who shot him after he had accepted a ride and had entered the vehicle. In our view, there is no coverage in either situation.

Affirmed.

**DURHAM, J.,** dissenting.

Defendant lost the vision in his right eye when an unknown gunman shot him from a passing automobile. The car approached defendant from behind the corner of a building in a shopping center. The upper torso of a male, who apparently was the gunman, protruded from the car window. Defendant heard an explosion, which he described as "either the gun going off or my eye exploding, I don't know which." The car sped away.

Defendant's policy affords coverage for the injury if it "arise[s] out of the ownership, maintenance or use" of the assailant's uninsured motor vehicle. In *Oakridge Comm. Ambulance v. U.S. Fidelity*, 278 Or 21, 24, 563 P2d 164 (1977), the court said:

> "The general rule for the interpretation of the words of the policy which are critical to the disposition of this controversy is set out in 7 Appleman, Insurance Law and Practice 144, § 4317, as follows:
>
> > " 'It has been stated that the liability of an insurer under the "ownership, maintenance, or use" provision should be measured in accord with the terms of a policy as understood by a person of reasonable intelligence. Although ownership, maintenance, or use of the automobile need not be the direct and efficient cause of the injury sustained, liability does not extend to results distinctly remote, though within the line of causation. The words "arising out of" when used in such a provision are

of broader significance than the words "caused by", and are ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle * * *.' (Footnotes omitted.)"

Under that test, defendant prevails. Viewing the facts in the light most favorable to him, we must infer that the vehicle was used to approach defendant at an angle and speed that would thwart detection, to position the gunman for the shot and to achieve a successful escape. The insurer's liability originated from, is incident to and has a connection with the vehicle's use. That satisfies the test set forth in the *Oakridge* case.

The majority's reliance on *Jordan v. Lee*, 76 Or App 472, 709 P2d 752 (1985), *rev den* 300 Or 545 (1986), is misplaced. In *Jordan*, the insured vehicle was a trailer. Two children played with a gun in it, and one was injured when the gun fired. We held, correctly, that

"[the accident] was the result of Kristina handling the gun, an act independent of the trailer's use. We hold that an injury does not arise out of the use of an automobile when, as here, it was directly caused by some act wholly disassociated from and independent of the vehicle's use." 76 Or App at 475.

*Jordan* is distinguishable because, in that case, the travel trailer was merely the site where the injury occurred, whereas the driver used the vehicle in this case to approach defendant, inflict the injury and escape. For other cases denying coverage because the insured vehicle was only the situs of the injury, *see Hartford Fire Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 264 Ark 743, 574 SW2d 265 (1978); *Carter v. Grain Dealers Mut. Ins. Co.*, 10 Ark App 16, 660 SW2d 952 (1983). Although the gun accident in *Jordan v. Lee* was "an act independent of the trailer's use" as a place for sleeping and storage, 76 Or App at 475, use of the vehicle here did play a substantial role in causing the injury, because the gunman used it to approach and ambush the victim and to escape. The injury was at least incident to the vehicle's use as a means of transportation even though the immediate cause of injury was the gunshot. Under the *Jordan* formulation of the rule, we cannot say that the driveby shooting was an "act wholly disassociated from and independent of the vehicle's use."

*Oakridge* holds that the vehicle's use need not be the direct and efficient cause of the injury for liability to attach. 278 Or at 25. The majority disregards that holding in declaring that

> "[i]t is immaterial that the vehicle may have facilitated the shooting and the escape. Its use was not the 'direct cause' of the shooting." 121 Or App at 295.

The majority is not free to impose a direct causation requirement in contradiction of the Supreme Court's declaration that that test is inapplicable under these policy terms.

The majority also ignores helpful cases from other jurisdictions that involve gunshot wounds or other injuries inflicted by moving vehicle occupants. In *Continental Western Insurance Co. v. Klug*, 415 NW2d 876 (Minn 1987), a victim was shot during a car chase. The Minnesota Supreme Court considered three factors in concluding that the injury arose out of the assailant's use of the vehicle: (1) the extent of causation between the automobile and the injury; (2) whether an act of independent significance occurred that broke the causal link between the use of the vehicle and the injuries inflicted; and (3) whether the vehicle was used for transportation purposes. It held that the driver's acts of driving to maneuver the car and shooting were "inextricably linked." 415 NW2d at 878.

In *State Farm Mut. Auto Ins. Co. v. Davis*, 937 F2d 1415 (9th Cir 1991), the Ninth Circuit applied California law and the *Klug* case in holding that a gunshot wound inflicted on a car's driver by another car's passenger was an injury that resulted from the use of a vehicle. The court distinguished cases like *Jordan v. Lee* "where the vehicle merely provides a situs for the tort," and those in which "an assailant left his vehicle before assaulting the other party." 937 F2d at 1422. The court held that the conduct of the assailant's driver in moving the car into position to give him the opportunity to fire his gun supported the conclusion that "the vehicle was more than incidental to this shooting." 937 F2d at 1421.

Although case matching is not always productive, I concur with the better reasoned decisions, such as the *Klug* and *Davis* cases, that hold that a gunshot injury, inflicted from a moving vehicle used for transportation purposes,

arises from the ownership, maintenance or use of the vehicle unless some other fact occurs to break the causal connection. That is the view of the majority of jurisdictions that have addressed this question. *See Cung La v. State Farm Auto Ins. Co.*, 830 P2d 1007, 1009 (Colo 1992) (noting that "[a] majority of the states that have dealt with the issue have found a sufficient causal connection under similar facts to invoke uninsured motorist insurance coverage"); *General Acc. Ins. Co. of America v. Olivier*, 574 A2d 1240 (RI 1990) (uninsured motorist fatally shot victim while she stood beside road after their cars collided; uninsured motorist coverage sustained); *Willard v. Kelley*, 803 P2d 1124 (Okla 1990); *Hulsey v. Mid-America Preferred Ins. Co.*, 777 P2d 932 (Okla 1989); *Detweiler v. J. C. Penney Cas. Ins. Co.*, 110 Wash 2d 99, 751 P2d 282 (1988) (truck owner fired shots at his own vehicle as it was being driven away by a thief and was injured by bullet fragments. Held: Uninsured driver's liability arose from use of the truck within uninsured motorist coverage); *Ruiz v. Farmers Ins. Co.*, ___ Ariz ___, 847 P2d 111 (1992), *rev granted* ___ Ariz ___ (March 16, 1993); *Fortune Ins. Co. v. Ferreiro*, 458 So 2d 834 (Fla Dist Ct App 1984); *Allstate Ins. Co. v. Gillespie*, 455 So 2d 617 (Fla Dist Ct App 1984); *Ganiron v. Hawaii Ins. Guar. Ass'n*, 69 Haw 432, 744 P2d 1210 (1987); *Foster v. Lafayette Ins. Co.*, 504 So 2d 82 (La Ct App), *writ den* 505 So 2d 61 (La 1987); *State Farm Mut. Auto. Ins. Co. v. Whitehead*, 711 SW2d 198 (Mo Ct App 1986); *Shouman v. Nationwide Ins. Co.*, 42 Ohio App 3d 159, 537 NE2d 696 (1988).

Here, no fact broke the causal connection between the vehicle's use and defendant's injury. He is entitled to coverage, and the majority errs in holding to the contrary.

I dissent.