Argued and submitted October 23, 1995, affirmed April 17, petition for review allowed August 20, 1996 (324 Or 78)

Thomas CARRIGAN, Jr.,
*Appellant,*

*v.*

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
an Illinois corporation,
*Respondent.*

(9409-06390; CA A87451)

914 P2d 1088

Charles A. Ringo argued the cause for appellant. With him on the briefs was Dahn & Ringo.

Michael C. Lewton argued the cause for respondent. With him on the brief were Thomas W. Brown and Cosgrave, Vergeer & Kester.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

Riggs, P. J., dissenting.

## LANDAU, J.

■   The issue in this case is whether defendant State Farm Mutual Automobile Insurance Company (State Farm) is obligated to pay personal injury protection (PIP) benefits to plaintiff, its insured, for injuries he suffered during a carjacking. The trial court entered summary judgment in favor of defendant. Plaintiff appeals, and we affirm.

The relevant facts are undisputed. At approximately 3:00 a.m. on July 22, 1994, plaintiff left his place of employment. As he was walking toward his car, Henderson, a man he did not know, approached plaintiff and asked for a ride to Tigard. Plaintiff agreed to give him a ride in that direction, and both men got into plaintiff's Mazda Miata. En route, Henderson pulled out a pistol, pointed it at plaintiff's head and began giving him directions. When they reached a residential neighborhood, Henderson ordered plaintiff to pull over, stop the engine and get out of the car. Plaintiff complied. Henderson then ordered plaintiff to climb into the trunk of the car, but because of the trunk's small size, plaintiff could not fit. Still pointing the pistol, Henderson ordered plaintiff to walk away from the car and lie face down on the ground. Because plaintiff feared that he would be shot in the back of the head if he complied, he backed away from the car but refused to lie down. When plaintiff was about 30 feet from the car, Henderson shot him in the chest, took the car and drove to California, where he turned himself in to the police. He subsequently pleaded guilty to and was convicted of robbery in the first degree.

Plaintiff survived his injuries, but he incurred substantial medical expenses. He filed a claim for PIP benefits under the terms of his automobile insurance policy with State Farm, which, in relevant part, states as to PIP coverage:

> "We will pay in accordance with the *Personal Injury Protection Act* for *bodily injury* to an *insured* caused by accident resulting from the maintenance or use of a *motor vehicle*."[1]

(Emphasis in original.) State Farm denied the claim, and plaintiff initiated this action for a declaration that, under the

---

[1] An "insured" includes a person "occupying" the vehicle.

terms of the policy, State Farm is obligated to provide PIP benefits. Both parties moved for summary judgment. The trial court granted State Farm's motion, denied plaintiff's motion and entered judgment accordingly. Because there is no genuine issue as to any material fact, we review the trial court's decision to determine whether State Farm is entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 139 Or App 244, 249-59, 911 P2d 1243 (1996).

Whether State Farm is entitled to judgment as a matter of law turns on the proper interpretation of the terms of its policy. Because those policy terms mirror the terms of Oregon's Insurance Code, we treat the interpretation of the policy as a matter of statutory construction. *Windsor Ins. Co. v. Judd*, 321 Or 379, 384, 898 P2d 761 (1995). In construing the statute, we examine the text in context and, if necessary, the legislative history and other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Relevant to our examination of the text is any prior judicial construction of the same, or similar, language. *See State v. Guzek*, 322 Or 245, 255, 906 P2d 272 (1995); *Moe v. MVD*, 133 Or App 75, 78, 889 P2d 1334 (1995).

■    The Insurance Code provides, in relevant part:

"(2)    [PIP] benefits apply to a person's injury or death resulting:

"(a)    * * * from the use, occupancy or maintenance of any motor vehicle[.]"

ORS 742.520(2). The subject of the parties' dispute is the interpretation of the term "resulting." Plaintiff urges us to adopt what he regards as a "strict" construction of the term, based solely on a dictionary definition of "result" as "to arise or proceed as a consequence from actions, circumstances, premises, etc." *Random House Webster's Electronic Dictionary* (1994).[2] State Farm argues that such a simplistic "but for" standard is inconsistent with our prior decisions construing nearly identical language.

---

[2] *Webster's Third New International Dictionary* 1937 (unabridged 1971), defines "result" in similar terms:

"to proceed, spring or arise as a consequence, effect or conclusion: come out or have an issue: TERMINATE, END - used with *from* or *in*."

We agree with State Farm that the "but for" standard that plaintiff proposes is incorrect. First, reliance on dictionary definitions as conclusive of the intentions of the legislature is generally inappropriate. *Davidson v. Oregon Government Ethics Comm.*, 300 Or 415, 420, 712 P2d 87 (1985); *Massee and Massee*, 138 Or App 589, 595, 911 P2d 320 (1996); *State v. Holloway*, 138 Or App 260, 265, 908 P2d 324 (1995).[3]

Second, a "but for" analysis is at odds with prior decisions construing similar language. For example, in *Oakridge Comm. Ambulance v. U.S. Fidelity*, 278 Or 21, 563 P2d 164 (1977), an insured ambulance company claimed coverage for injuries allegedly suffered by a patient transported by the company. The Supreme Court said of policy language requiring coverage for injuries "arising out of" use, operation or maintenance of motor vehicles:

> " 'It has been stated that the liability of an insurer under the "ownership, maintenance, or use" provision should be measured in accord with the terms of a policy as understood by a person of reasonable intelligence. Although ownership, maintenance, or use of the automobile need not be the direct and efficient cause of the injury sustained, liability does not extend to results distinctly remote, though within the line of causation. The words "arising out of" when used in such a provision are of broader significance than the words "caused by," and are ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle * * *.' (Footnotes omitted.)"

*Id.* at 25 (quoting 7 Appleman, *Insurance Law and Practice* 144, § 4317 (1962)). The court acknowledged that its formulation of the test did not constitute an easily applied bright line analysis. It described the necessary examination in terms of a continuum:

> "On one end of the continuum is the situation in which insured's ambulance while being negligently driven hits

---

[3] One reason for that general rule is that dictionary definitions are frequently simple tautologies. That problem is illustrated by this case, in which the dictionary essentially says that something is a "result" if it is a result. As we have noted, *Webster's* defines the verb "result" as, among other things, "to proceed" or "spring." It then defines the verb "spring" as, among other things, to "proceed" or "result." *Webster's Third New International Dictionary* 2209 (unabridged 1971).

and injures a party. On the other end is the situation in which a potential customer, upon entering insured's place of business to order an ambulance to take his sick mother to the hospital, trips over a negligently arranged rug and breaks his leg. Coverage would exist as a matter of law in the first situation. In the latter situation, however, coverage as a matter of law does not exist, despite the causal connection between the broken leg and the 'ownership, maintenance or use' of the ambulance. Granted, had it not been for the insured's ownership, maintenance and use of the ambulance, the customer would not have been in the insured's office to order an ambulance for his mother and would not have broken his leg; nonetheless, the causal connection would be too attenuated to afford coverage."

*Oakridge*, 278 Or at 25-26.

This court applied the Supreme Court's *Oakridge* analysis in *Jordan v. Lee*, 76 Or App 472, 709 P2d 752 (1985), *rev den* 300 Or 545 (1986). In that case, two children who had been napping earlier in a trailer found a loaded gun there. One of the children accidentally discharged the gun, which resulted in injury to the other child. The parents of the children claimed coverage under their automobile insurance policy, which provided liability coverage for injuries "arising out of ownership, maintenance or use of" an automobile. We held that the policy did not provide coverage. Construing the policy language to require that, to be covered, an injury "must originate from, be incident to or have a connection with the use of the vehicle," we held that the use of the trailer as a place of storage for the loaded weapon

"played no role in causing the accident. True, had the two uses, providing place and means for the accident, not concurred, the accident would not have happened. Nevertheless, the accident was not the result of the two uses; rather, it was the result of [one child] handling the gun, an act independent of the trailer's use."

*Jordan*, 76 Or App at 475. In other words, but for the storage of the gun in the trailer, the accident would not have occurred. Nevertheless, the causal link was interrupted by the independent act that had nothing to do with the use of the vehicle. Thus, we rejected the simple "but for" test that plaintiff now proposes.

Similarly, in *Worldwide Underwriters Ins. Co. v. Jackson*, 121 Or App 292, 855 P2d 166, *rev den* 318 Or 26 (1993), the insured was wounded by gunshot from a drive-by shooting. We rejected the "but for" argument that, without the use of the vehicle, the shooting would not have happened:

> "The question is whether the injury resulted from 'some act wholly disassociated from and independent of the vehicle's use.' Here, as in *Jordan*, the firing of the gun was such an act. It is immaterial that the vehicle may have facilitated the shooting and the escape. Its use was not the 'direct cause' of the shooting."

*Id.* at 295. We emphasized that, although "there is no doubt that the use of the assailant's vehicle was 'within the line of causation' of the injury," the injury was too remote from the use of the vehicle to qualify as having arisen out of the use, occupation or maintenance of a motor vehicle. *Id.* at 296. Thus, once again, we rejected the "but for" approach and applied a more exacting test of "direct causation," uninterrupted by an intervening act that is "wholly disassociated from and independent of the vehicle's use."

Oakridge, *Jordan* and *Worldwide* construed slightly different language, to be sure. Nevertheless, we find those cases instructive, because, as the Supreme Court said in *Oakridge*, the term "arising out of" is a broader and more inclusive phrasing than other common references to causation. Moreover, the parties have cited no evidence that the legislature intended the term "resulting from" to be construed more broadly than "arising out of," and we are aware of none.

It follows that, if a simple "but for" or "line of causation" analysis cannot satisfy the requirement that injuries "arise out of" the use, operation or maintenance of motor vehicles to trigger PIP coverage, the statutory requirement that injuries "result from" such use, operation or maintenance can require no less. Accordingly, we read *Oakridge*, *Jordan*, and *Worldwide* to require a more qualitative evaluation of the nature of the causal link between an injury and the use, operation or maintenance of a motor vehicle. The causal link may in some cases, such as *Jordan*, be too attenuated and remote to require coverage. It may in other cases, such as *Worldwide*, have been interrupted by an intentional

criminal act that is itself independent of the use, operation or maintenance of a motor vehicle. In each case, however, a judgment call must be made as to where along a continuum of causation fall the facts of each case. With those principles in mind, we turn to the undisputed facts of this case.

We conclude that the trial court correctly determined that plaintiff's injuries did not "result from" the use, operation or maintenance of a motor vehicle. As in *Worldwide*, they resulted from the intentional decision of a third party to pull the trigger of a loaded weapon in order to complete the commission of a crime. At that moment, neither plaintiff nor Henderson was driving the car; they were 30 feet away from it. Thus, it cannot be said in any ordinary sense that either plaintiff or Henderson was "using" the car. It was empty. Nor, for the same reason, can it be said that anyone was occupying it. *See Marcilionis v. Farmers Ins. Co.*, 318 Or 640, 642-43, 871 P2d 470 (1994) (insured who was injured while standing in the street retrieving car keys was not "occupying" a car when injured).

Plaintiff and the dissent insist that *Worldwide* is distinguishable because, in that case, the use of a motor vehicle was incidental to the crime, while, in this case, it was central to Henderson's purpose. They argue that, because Henderson's very object was to steal plaintiff's car, any injuries that resulted should require PIP coverage. We are not persuaded. In the first place, it is undisputed that plaintiff's injuries were caused by the discharge of a handgun. Whatever Henderson's subjective motivations, the fact remains that they did not cause plaintiff's injuries; the discharge of the handgun did. Moreover, even assuming that the carjacker's subjective motivations are relevant to determining coverage, in this case, there is no evidence that Henderson needed—for example, because of resistance on the part of plaintiff—to shoot plaintiff to obtain possession of plaintiff's car. The undisputed facts demonstrate that, by the time Henderson pulled the trigger of his gun, he had completed his carjacking and already had possession of the car. In our view, under the circumstances, Henderson's subjective motivations as to the car theft were too remote and attenuated for us to conclude that plaintiff's injuries resulted from them.

We conclude that the trial court did not err in entering summary judgment in favor of State Farm.

Affirmed.

**RIGGS, P. J.,** dissenting.

Because I conclude that there is a sufficient causal connection between plaintiff's *use* of his car and the injuries that were inflicted on him by Henderson in an effort to *take* that car, and because we are required to construe the policy's undefined phrase "resulting from" in favor of the insured, I dissent.

Plaintiff was injured as a result of the fact that he was using a car that Henderson wanted to steal. The majority makes much of the fact that Henderson's "discharge of a handgun" was the "direct cause" of plaintiff's injuries and even implies that coverage should be denied because the carjacking could have been accomplished without Henderson firing the gun. But there is no dispute that plaintiff's use of the car created the actual *basis* for the assault even if that assault was unnecessary to accomplish Henderson's goal. Despite the criminal nature of Henderson's act, it was not "wholly disassociated from" plaintiff's use of the car, as was the case in *Jordan v. Lee,* 76 Or App 472, 709 P2d 752, *rev den* 300 Or 545 (1985). Nor was his vehicle merely the means of transportation to the site of the assault, as in *Worldwide Underwriters Ins. Co. v. Jackson,* 121 Or App 292, 855 P2d 166, *rev den* 318 Or 26 (1993). Here, unlike *Jordan* and *Worldwide,* there was a direct nexus between plaintiff's use of his car and the assault, and a reasonable interpretation of the phrase "resulting from" encompasses such direct associations. Accordingly, I would hold that plaintiff is entitled to PIP benefits.

I therefore dissent.