Argued and submitted May 20, 2014, reversed and remanded March 25, 2015

Jessica Gonzalez DE ZAFRA,
*Plaintiff-Appellant,*

*v.*

FARMERS INSURANCE COMPANY,
*Defendant-Respondent.*

Multnomah County Circuit Court
110506648; A152630

346 P3d 652

Travis Eiva argued the cause and filed the briefs for appellant.

Thomas M. Christ argued the cause for respondent. With him on the brief was Cosgrave Vergeer Kester LLP.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

**DEVORE, J.**

Plaintiff was the victim of a drive-by shooting. As an insured under an auto policy, she sought uninsured motorist (UM) benefits in a contract action against defendant, Farmers Insurance Company (Farmers). After cross-motions for summary judgment, the trial court dismissed her claim on the basis that her injury did not "arise out of the * * * use of [an] uninsured vehicle," as provided in ORS 742.504(1)(a) and Farmers' policy. On appeal, the issue is whether this case is governed by our decision 22 years ago interpreting policy language in a claim for UM benefits or is governed by a more recent decision of the Supreme Court interpreting similar statutory language in a claim for personal injury protection (PIP) benefits. Because statutory language prevails over policy language and the Supreme Court's interpretation of similar terms is dispositive, we conclude that the trial court erred in part and that Farmers' policy may cover plaintiff's injuries, although other issues remain for decision. Therefore, we reverse and remand for further proceedings.

The relevant facts are undisputed. Two cars traveled the same direction on a street in northeast Portland. Plaintiff was a passenger in a car insured by Farmers with UM coverage required by ORS 742.504.[1] In the next lane, Jesse Guerrero drove a vehicle alongside plaintiff's car. Gunshots were fired from Guerrero's vehicle into plaintiff's car, causing her serious injuries. Because Guerrero's insurer denied coverage for his liability, his vehicle was deemed an

---

[1] The insuring clause of the policy's uninsured motorist coverage provided, in relevant part:

"We will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle because of bodily injury sustained by the insured person. The bodily injury must be caused by accident and *arise out of the ownership, maintenance or use of the uninsured or underinsured vehicle.*"

(Boldface omitted; emphasis added.) The comparable, operative provision of the statute provides, in relevant part,

"[T]he insurer will pay all sums that the insured * * * is legally entitled to recover * * * from the owner or operator of an uninsured vehicle because of bodily injury sustained by the insured caused by accident and *arising out of the ownership, maintenance or use of the uninsured vehicle.*"

ORS 742.504(1)(a) (emphasis added).

"uninsured motor vehicle" under the terms of plaintiff's policy and statute.[2] Plaintiff made a claim for UM benefits with Farmers. The insurer denied her claim, and she commenced an action against Farmers for breach of contract.

The parties filed cross-motions for summary judgment on coverage. Farmers contended that our decision in *Worldwide Underwriters, Ins. Co. v. Jackson*, 121 Or App 292, 855 P2d 166, *rev den*, 318 Or 26 (1993) (*Jackson*), should control because the decision construed the same phrase in a UM policy ("arising out of"); determined a gunshot, not a vehicle, to be the "direct cause" of injury; and upheld the denial of coverage. Plaintiff contended that a more recent Supreme Court decision in *Carrigan v. State Farm Mutual Auto. Ins. Co.*, 326 Or 97, 949 P2d 705 (1997), should control, because the court construed similar language in the PIP statute and rejected a "direct cause" interpretation. Plaintiff reasoned that *Carrigan* portends that ORS 742.504(1)(a) should require UM coverage for plaintiff's injuries. Farmers responded that *Carrigan*'s interpretation should be limited to PIP coverage as a different form of coverage that provides no-fault coverage for medical bills and wage loss. The trial court deemed *Carrigan* distinguishable, found *Jackson* to be on point, denied plaintiff's motion, granted Farmers' motion, and entered judgment dismissing plaintiff's action.

On appeal, plaintiff assigns error to the order granting defendant summary judgment and denying plaintiff summary judgment. Plaintiff argues that our earlier decision in *Jackson* did not consider the controlling terms of ORS 742.504(1)(a) on mandated UM coverage and that the Supreme Court construed the parallel terms of ORS 742.520 on PIP coverage. Farmers responds that *Jackson* is still good law and, if nothing else, the doctrine of *stare decisis* counsels adherence to *Jackson* as to UM coverage for a drive-by shooting. Resolution of the dispute turns upon whether our prior conclusion remains true in light of the mandatory terms of the UM statute, ORS 742.504(1)(a).

Our decision in *Jackson* and the cases on which it relied were indeed cases that construed policies without

---

[2] On that fact, the parties agreed. *See* ORS 742.504(2)(k)(A) (vehicle deemed uninsured by liability insurer's denial of coverage).

considering a statutory mandate for coverage, if any pertained. Based in policy language, those cases developed a standard for the causal connection between an injury and use of a vehicle. We first recap *Jackson* in order to then assess the implication of *Carrigan* as to the statutory mandate for UM coverage.[3]

        *Jackson* also involved a drive-by shooting. As a car approached the victim, a man leaned out the car window and fired a gun, blinding the victim in his right eye. The man escaped in the car unidentified. The victim's UM insurer sought a declaratory ruling that, under the terms of the policy, the injury did not "arise out of the ownership, maintenance, or use" of the uninsured vehicle.[4] The victim asserted that there was a necessary relationship between the use of the vehicle and the injury, because the vehicle was used to launch the assault, approach him without detection, fire the shot, and escape. We responded, "It is immaterial that the vehicle may have facilitated the shooting and the escape. It was not the 'direct cause' of the shooting." 121 Or App at 295. We had "no doubt that the use of the assailant's vehicle was 'within the line of causation' of the injury." *Id.* at 296. But the policy language raised a question of "causation and remoteness." *Id.* Summarizing prior cases, we declared, "Coverage depends on whether the injury 'was *directly* caused by some act wholly disassociated from and independent of the vehicle's use." *Id.* (emphasis added). We concluded that the "critical fact" was that the injury was "directly caused by the use of a gun." *Id.* at 297. Therefore, the injury did not "arise out of the ownership, maintenance or use" of an uninsured vehicle. *Id.* at 294. In reaching that conclusion, we relied on two cases that had construed liability policies to determine the requisite causal connection between a vehicle

---

[3] Our reference to the "UM" statute is for convenience and is not intended to imply any difference for these purposes with regard to underinsured motorist (UIM) coverage. Reference to the "UM" statute could be made to the "UM/UIM" statute, in other circumstances. *See* ORS 742.502 (mandating UIM coverage within the UM terms of ORS 742.504). This case, however, only involves UM coverage and any special mention of UIM is unnecessary.

[4] Given an unidentified driver and vehicle, the claim assumed that the vehicle was "uninsured." *See* ORS 742.504(2)(k)(A) - (C) (uninsured vehicle includes vehicle with unknown insurance, a hit-and-run vehicle, or a phantom vehicle, respectively).

and an injury: *Oakridge Comm. Ambulance v. U.S. Fidelity*, 278 Or 21, 24, 563 P2d 164 (1977) (*Oakridge Ambulance*) (death allegedly linked to delayed ambulance), and *Jordan v. Lee*, 76 Or App 472, 475, 709 P2d 752, *rev den*, 300 Or 545 (1986) (gunshot injury in a travel trailer).[5] We affirmed the judgment denying coverage.

A member of the court, then-Judge Durham, dissented, drawing from the same precedents. *Jackson*, 121 Or App at 297 (Durham, J., dissenting). He quoted a Supreme Court decision for its use of an insurance treatise, which, in part, observed, "The words 'arising out of' when used in such a [policy] provision are of broader significance than the words 'caused by[.]'" *Id.* at 297-98 (quoting *Oakridge Ambulance*, 278 Or at 24 (citing Appleman 7, *Insurance Law & Practice* § 4317, 144)). Concluding that a "vehicle's use need not be the direct and efficient cause," then-Judge Durham urged, "The majority is not free to impose a direct causation requirement * * *." *Id.* at 299. Although his observations proved unpersuasive in *Jackson*, they presaged the Supreme Court decision in *Carrigan* and its statutory analysis.

In *Carrigan*, the Supreme Court faced the question whether, in light of a statutory mandate, State Farm's policy should provide PIP coverage for a gunshot injury suffered in a carjacking. 326 Or at 99. Early one morning, the plaintiff had agreed to give a stranger a ride. Along the way, the stranger Henderson pulled a gun, pointed it at the plaintiff, and gave him directions. Later, Henderson ordered the plaintiff out of the car and into the trunk. The plaintiff could not fit in the trunk. When he backed about 30 feet away from the vehicle, Henderson shot him in the chest. The plaintiff survived to file a claim for PIP benefits for medical

---

[5] In *Oakridge Ambulance*, the court recited a general rule to the effect that:

"'Although ownership, maintenance, or use of the automobile need not be the direct and efficient cause of the injury sustained, liability does not extend to results distinctly remote, though within the line of causation. The words "arising out of" when used in such a provision are of broader significance than the words "caused by", and are ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle * * *.'"

278 Or at 25 (quoting Appleman 7, *Insurance Law and Practice*, § 4317, 144 [1967]).

expenses. State Farm denied the claim, and the plaintiff initiated a declaratory proceeding to challenge the denial. The trial court gave summary judgment for the insurer. *Id.* at 100.

Under ORS 742.520(2)(a), policies are mandated to provide PIP coverage for injuries "resulting * * * from the use, occupancy or maintenance of any motor vehicle."[6] The plaintiff based his complaint on the terms of the statute. When the case was before this court, we observed that the PIP statute's phrase, "resulting from," was not the broader phrase, "arising out of," and that *Oakridge Ambulance, Jordan,* and *Jackson* all required more than the simple fact that the vehicle's use is within the "line of causation." We held that the trial court correctly determined that the injuries did not "result from" the use of a vehicle. *Carrigan v. State Farm Mutual Auto. Ins. Co.,* 140 Or App 359, 366, 914 P2d 1088 (1996), *rev'd,* 326 Or 97, 949 P2d 795 (1997).

The Supreme Court reversed. *Carrigan,* 326 Or at 105. The court recognized that the phrase, "resulting from," had two plausible interpretations. One would "limit coverage only to injuries that *are inflicted directly by the use of a motor vehicle* and *during* the operation of the vehicle." *Id.* at 102 (emphasis in original). Another would "cover injuries that result *indirectly* from the use of a motor vehicle, as well as those that result directly from such use." *Id.* at 102-03 (emphases in original). The court observed:

> "The legislature used the term 'resulting' by itself and did not modify that term with the adjective 'direct' or any similar limiting term. If the legislature desires to restrict the scope of coverage that the statute contemplates, it does not lack the linguistic tools necessary to achieve that outcome."

*Id.* at 103. Finding no legislative history on the phrase "resulting from the use * * * of any motor vehicle," the court

---

[6] In relevant part, ORS 742.520 provides:

"(2) Personal injury protection benefits apply to a *person's injury or death resulting*:

"(a) In the case of the person insured under the policy and members of that person's family residing in the same household, *from the use, occupancy or maintenance of any motor vehicle*[.]"

(Emphases added.)

turned for guidance to the introduction to the Insurance Code. The court noted that ORS 731.008 provides that "the Insurance Code is for the protection of the insurance-buying public." *Id.* at 104. And, ORS 731.016 advises that "[t]he Insurance Code shall be liberally construed" to further that purpose. *Id.* Speaking to the general possibility of coverage, the court announced:

> "Thus, our consideration of statutory text, context, legislative history, and pertinent maxims of statutory construction cumulatively leads us to hold that PIP coverage extends to gunshot injuries that result from the use of a motor vehicle."

*Id.* at 105. That general conclusion, however, did not address the particular circumstance of the case. If a car's occupant were "shot by a sniper," the court posited, then the victim would be "injured as a result of the use of a motor vehicle" so as to be covered. *Id.* But what about this plaintiff standing 30 feet outside a vehicle? The court concluded that, because the assailant had taken over use of the car and shot the plaintiff in close proximity soon thereafter, the carjacking and injury were the result of a "use" of the vehicle so as to require coverage. *Id.* PIP coverage was mandated.

Contrary to defendant's argument, *Carrigan* cannot be ignored as an aberration involving a distinguishable form of auto coverage. In this case, unlike in *Jackson*, the plaintiff asserts the statutory terms of UM coverage. Under ORS 742.504, every subject motor vehicle policy must provide terms of coverage that are no less favorable than the statutory terms.[7] *See, e.g., Erickson v. Farmers Ins. Co.*, 331 Or 681, 685, 21 P3d 90 (2001) (invalidating a policy's less favorable provisions); *Vega v. Farmers Ins. Co.*, 323 Or 291, 300-01, 918 P2d 95 (1996) (same). The mandated UM coverage requires that

> "the insurer will pay all sums that the insured, the heirs or the legal representative of the insured is legally entitled

---

[7] In part, ORS 742.504 begins with this admonition:

"Every policy required to provide the coverage specified in ORS 742.502 shall provide uninsured motorist coverage that in each instance is no less favorable in any respect to the insured or the beneficiary than if the following provisions were set forth in the policy."

> to recover as general and special damages from the owner or operator of an uninsured vehicle because of bodily injury sustained by the insured caused by accident and *arising out of the ownership, maintenance or use of the uninsured vehicle.*"

ORS 742.504(1)(a) (emphasis added).[8] This mandate is addressed in terms of injuries that "arise out of" the use of an uninsured vehicle, and, as such, it happens to be the phrase that has been repeatedly described as "broader" than the phrase, "caused by" the use of a vehicle. *See Oakridge Ambulance*, 278 Or at 25; *see also Jordan*, 76 Or App at 475 (acknowledging that "arising out of" has a broader meaning than "caused").

We cannot draw a meaningful distinction between the operative phrase in the UM statute—"arising out of"—and the operative phrase in the PIP statute—"resulting from"—which *Carrigan* construed.[9] *See* ORS 742.504(1)(a); ORS 742.520(2)(a). The benefits may be different. That is, PIP may provide no-fault recovery for medical costs and wages loss, ORS 742.524, while UM may provide fault-based recovery for economic and noneconomic damages, ORS 742.504(1)(a)(B). But the causal link in the two statutes between an injury and a vehicle use is the same.[10]

Plaintiff is correct that *Carrigan* portends a different result when ORS 742.504(1)(a) is invoked to demand mandated coverage that may be broader than what a policy might provide. *See, e.g., Erickson*, 331 Or at 687 (invalidating "other insurances" provisions in a policy); *Vega*,

---

[8] The issue whether the injury is "caused by accident" is not raised here as an issue or apparently disputed by the parties. From the perspective of the injured insured, the injury may be caused by accident. *See Davis v. State Farm Mut. Ins.*, 264 Or 547, 507 P2d 9 (1973) (intentional act by wrongdoer; decided on Michigan law); *see also Fox v. Country Mutual Ins. Co.*, 327 Or 500, 964 P2d 997 (1998) (intentional wreck, unintentional injury).

[9] After consulting dictionary terms, the *Carrigan* court summarized, "[T]he question becomes whether plaintiff's gunshot injury proceeds, springs, *or arises* as a consequence of plaintiff's use of his motor vehicle." 326 Or at 102 (emphasis added).

[10] In *Jackson*, this court borrowed from prior interpretations of liability policies when interpreting similar language in a UM policy, although the prior interpretations were decisions involving a different form of motor vehicle coverage. 121 Or App at 295-97.

323 Or at 303 (invalidating exhaustion clause not permitted by statute at that time). Much like the PIP statute at ORS 742.520(2)(a), the UM statute at ORS 742.504(1)(a) provides that UM coverage "will pay all sums" that would be recoverable "as general or special damages" because of bodily injury "arising out of the ownership, maintenance or use of the uninsured vehicle." Like the Supreme Court in *Carrigan*, we observe that the legislature did not insert a requirement that the injury be "directly caused" by vehicle use. If the legislature had desired to restrict the scope of coverage in that way, "it does not lack the linguistic tools necessary to achieve that outcome." *Carrigan*, 326 Or at 103. To the contrary, the legislature chose for UM coverage the broad phrase "arising out of" vehicle use. The parties have pointed to no legislative history, and we are aware of none indicating a narrower meaning.

As was the court in *Carrigan*, we are mindful of the admonition of ORS 731.008 and ORS 731.016 that the Insurance Code should be liberally construed for the protection of the insurance-buying public. Because a policy must provide coverage no less favorable than the statute, we conclude that ORS 742.504(1)(a) requires UM coverage when the injury arises out of the use of an uninsured vehicle and that coverage cannot be denied based on an interpretation that the gunshots were the "direct cause" of injury.

Understandably, Farmers invokes the doctrine of *stare decisis* to dissuade this court from reaching a result contrary to *Jackson*, a similar UM claim based on a drive-by shooting. *Stare decisis* is a prudential doctrine that embodies the tension between stability and correction of error. *See Farmers Ins. Co. v. Mowry*, 350 Or 686, 698, 261 P3d 1 (2011). The doctrine requires that a court begin with the assumption that issues were correctly resolved in cases previously decided. *Id.* Departure from precedent may be considered when the previous court was "not presented with an important argument or failed to apply [its] usual framework for decision." *Id.* The "court is [also] willing to reconsider cases when the legal or factual context has changed in such a way as to seriously undermine the reasoning or result of earlier cases." *Id.* For both reasons, we do not adhere to *Jackson*. This court was not asked in *Jackson* to consider

the implication of the statutory mandate for coverage as required by ORS 742.504(1)(a). In addition, the subsequent decision in *Carrigan,* involving statutory text that cannot be distinguished, represents a changed legal context. Indeed, because *Carrigan* is a decision of the Supreme Court, it is an interpretation of a similar provision that we are not free to ignore.[11]

Our conclusion on coverage means that the trial court erred in granting Farmers' motion for summary judgment. Plaintiff may show that the offender's vehicle was used to approach with surprise and maximize the likelihood of injury. Those facts would establish that "the temporal and spatial distance" between that vehicle use and the injury are sufficient to permit the conclusion that that the injury arose out of use of the vehicle. *See Carrigan,* 326 Or at 105; *see also Davis,* 264 Or 547 (vehicle used to inflict intentional injury).

Farmers argues that this conclusion should not mean that the trial court erred in denying plaintiff's cross-motion for summary judgment, by which plaintiff had sought a declaration that there *is* coverage for this injury. Farmers argues that plaintiff has not yet proved, in the language of the insuring clause, that plaintiff is legally entitled to recover from the "owner or operator of the uninsured * * * motor vehicle." *See* ORS 742.504(1)(a) (statutory analogue). Farmers disputes whether plaintiff succeeded in showing all that was necessary for coverage, at least at this time.

Farmers is correct. Failure of Farmers' motion to defeat coverage does not require granting plaintiff's cross-motion to declare coverage. The complaint does not allege specifically that Guerrero fired the shots or is otherwise liable as a tort conspirator or joint tortfeasor. No declarations or affidavits appear in the record to establish that specific

---

[11] Mandated coverage is a matter of public policy, and public policy is a matter for legislative review. Quite reasonably then, judicial decisions may precede legislative responses. *See, e.g., Vega,* 323 Or 291 (finding no exhaustion clause in statute); Or Laws 1997, ch 808, § 2 (amending ORS 742.504(4) to add UM exhaustion clause); *see also Davis v. O'Brien,* 320 Or 729, 891 P2d 1307 (1995) (comparative fault of lesser actor); Or Laws 1995, ch 696, §§ 3 and 5 (amending ORS 18.470 and *former* 18.485 (1995), *renumbered as* ORS 31.610 (2003) to limit comparative fault).

fact. The allegation of the complaint certainly *does permit* such proof to be offered, and plaintiff may yet prove facts to establish coverage. But, construing facts on plaintiff's cross-motion in favor of the non-moving party, ORCP 47 C, the ambiguity of the complaint and the absence of specific evidence by affidavit or declaration mean that the trial court did not err in denying plaintiff's cross-motion. Further proceedings, to which plaintiff alludes in reply, may establish such facts.[12] The liability of the uninsured motorist and the extent of recoverable damages remain to be determined.

For these reasons, we conclude that the trial court erred in granting Farmers' motion for summary judgment and did not err in denying plaintiff's cross-motion.

Reversed and remanded.

---

[12] In her reply brief, plaintiff argues that Guerrero pleaded guilty to a charge of attempted murder of plaintiff.