Argued and submitted January 8, decision of the Court of Appeals and judgment of the circuit court reversed; case remanded to the circuit court for further proceedings November 28, 1997

Thomas CARRIGAN, Jr.,
*Petitioner on Review,*

*v.*

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
an Illinois Corporation,
*Respondent on Review.*

(CC 9409-06390; CA A87451; SC S43296)

949 P2d 705

Charles A. Ringo, of Dahn & Ringo, Beaverton, argued the cause and filed the petition on behalf of petitioner on review.

Thomas W. Brown, of Cosgrave, Vergeer & Kester, L.L.P., Portland, argued the cause on behalf of respondent on review. With him on the brief was Wendy M. Margolis, Portland.

KULONGOSKI, J.

The decision of the Court of Appeals and the judgment of the circuit court are reversed. The case is remanded to the circuit court for further proceedings.

Carson, C. J., dissented and filed an opinion in which Gillette and Graber, JJ., joined.

**KULONGOSKI, J.**

This declaratory judgment case presents two issues: (1) whether Oregon's automobile personal injury protection (PIP) statutes, which provide coverage for injuries "resulting from the use, occupancy or maintenance of any motor vehicle," ORS 742.520(2)(a), quoted below, 326 Or at 100, may extend to an injury inflicted by gunshot; and (2) if PIP coverage may be available, whether it applies to the circumstances of this case, in which plaintiff (the insured) was shot by an assailant during the course of a "carjacking,"[1] when neither the assailant nor the plaintiff was inside the car at the time of the shooting.

■ For the reasons that follow, we hold that ORS 742.520 does not exclude from PIP coverage all injuries inflicted by gunshot and that the injury in this case is covered under ORS 742.520, because it resulted from the "use" of a motor vehicle. Therefore, we reverse the contrary decision of the Court of Appeals.

The historical facts are not in dispute. At approximately 3 a.m. on July 22, 1994, plaintiff left his place of employment and walked toward his car. Plaintiff was approached by a stranger named Henderson, who sought a ride in the direction that the insured was headed. Plaintiff agreed to give Henderson a ride.

En route, Henderson brandished a gun, aimed it at plaintiff, and told him where to proceed. When they arrived at a residential neighborhood, Henderson ordered plaintiff to pull over, turn off the engine, and get out of the car. Plaintiff complied. Henderson also got out of the car and ordered plaintiff to get into the trunk. Plaintiff attempted to do so, but was unable to fit. Henderson then ordered plaintiff to back away from the car and lie face down on the ground. Plaintiff backed away from the car; however, fearing that he would be shot, he refused to lie down and continued backing away.

---

[1] The Court of Appeals characterized the chain of events in this case as constituting a "carjacking," which is, in common parlance, the forcible taking of a motor vehicle from its driver, often—as in this case—accompanied by a kidnapping of the driver. The parties have described the incident as a carjacking as well. Therefore, we adopt that characterization for the purposes of discussing this case.

After plaintiff had backed away from the car approximately 30 feet, Henderson shot him in the chest. Henderson then drove away. Plaintiff survived, but he incurred substantial medical expenses for treatment of his gunshot wound.

Plaintiff filed a claim for PIP benefits under his automobile insurance policy with defendant. Defendant denied the claim. Plaintiff then brought this action, seeking a declaration that defendant was obligated to pay the claim pursuant to the minimum PIP coverage provided by statute. Both parties moved for summary judgment. The trial court granted summary judgment to defendant.

Plaintiff appealed. The Court of Appeals affirmed the trial court's award of summary judgment. *Carrigan v. State Farm Mutual Auto. Ins. Co.*, 140 Or App 359, 914 P2d 1088 (1996). The Court of Appeals concluded that the injury did not result from the use of a motor vehicle but, rather, resulted from an intervening cause—the intentionally inflicted gunshot. 140 Or App at 366.

At the outset, we note that the specific terms of defendant's policy are not at issue in this case.[2] Plaintiff concedes that his complaint is not based on the terms of the policy, except to the extent that the policy agrees to "pay in accordance with the Personal Injury Protection Act." Therefore, we do not consider whether defendant's policy provided any greater coverage than that afforded by the statutory minimum protection of PIP. We consider only the scope of coverage under PIP.

The part of the PIP coverage at issue in this case is ORS 742.520(2), which provides, in part:

"Personal injury protection benefits apply to a person's injury or death resulting:

"(a)   * * * from the use, occupancy or maintenance of any motor vehicle[.]"

Plaintiff has not argued to this court that the injury resulted from the occupancy or maintenance of a motor vehicle.[3]

---

[2] The policy provided coverage "for *bodily injury* * * * caused by accident resulting from the maintenance or use of a *motor vehicle*." (Emphasis in original.)

[3] Plaintiff argued in the trial court and again in the Court of Appeals that his injury resulted either from the *use* or the *occupancy* of his car. However, plaintiff

Rather, plaintiff argues that the injury resulted from the *use* of a motor vehicle. Specifically, plaintiff argues that the injury resulted from a carjacking that commenced while he was using his car and that the eventual shooting, which occurred during the carjacking but after plaintiff had gotten out of the car, resulted from the use of the car. Defendant argues that the statute covers only injuries that result from a motor vehicle accident and that plaintiff's gunshot injuries did not result from a motor vehicle accident. In the alternative, defendant argues that the statute covers injuries normally associated with the use of a motor vehicle and that the discharge of a gun is not conduct normally associated with the use of a motor vehicle.

*What is the General Scope of PIP Coverage?*

In construing a statute, this court's task is to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). To discern legislative intent, this court first looks to the text and context of the statute. *Id.* at 610-11. If the intent of the legislature is clear from text and context, we proceed no further. *Id.* at 611. If the text and context do not make the legislature's intent clear, we then inquire into legislative history. *Id.* at 611-12. Finally, if the legislative history, coupled with text and context, still provides no clear answer, we then turn to legal maxims. *Id.* at 612.

ORS 742.520(2) incorporates three elements that must be met before PIP coverage attaches. First, there must be an "injury or death." Second, the injury must "result[ ] * * * from the use" of a vehicle. Third, the vehicle must be a "motor vehicle." The parties agree that there was an injury in this case and that a motor vehicle was involved. The only dispute centers on whether the injury *resulted* from the *use* of the motor vehicle.

The terms "resulting" and "use" are not defined in the PIP statutes. They are, however, terms of common usage and, as such, typically are given their plain, natural, and

---

argues to this court only that his injury resulted from its use. Therefore, we need not, and do not, consider whether his injury resulted from the occupancy of a motor vehicle.

ordinary meaning. *PGE*, 317 Or at 611. The ordinary meaning of "resulting" is "to proceed, spring, or arise as a consequence, effect, or conclusion." *Webster's Third New International Dictionary*, 1937 (3d ed 1993).[4] The word "use" means "the act or practice of using something." *Id.* at 2523. In view of the definitions quoted above, the question becomes whether plaintiff's gunshot injury proceeds, springs, or arises as a consequence of plaintiff's use of his motor vehicle.

At least two plausible interpretations flow from those definitions. The first would require that the gunshot injury be the direct consequence of the use of the vehicle. Applying that interpretation, plaintiff's gunshot injury did not result from the use of a motor vehicle, because use of the motor vehicle was not the most direct cause of the injury.[5] We can imagine very few cases, if any, in which that interpretation would permit recovery for a gunshot injury.

A second, equally plausible, interpretation would permit coverage if the gunshot injury is the consequence or effect of any use of the vehicle. Under that interpretation, a gunshot injury results from the use of the vehicle if the injury is a consequence or effect to which any use of the vehicle leads. The injury in this case was inflicted by a gunshot that arose in the course of a carjacking. That injury may be viewed as a consequence or effect of the use of plaintiff's car as the object of a carjacking.

Both interpretations offered by the parties arguably require the insertion of terms that are not found in the text of ORS 742.520(2). The former interpretation construes the wording to limit coverage only to injuries that *are inflicted directly by the use of a motor vehicle* and *during* the operation of the vehicle. In contrast, the latter interpretation construes

---

[4] *Black's Law Dictionary*, 1478 (rev 4th ed 1968), defines "result" similarly as:

"That which results, the conclusion or end to which any course or condition of thing leads, or which is obtained by any process or operation; consequence or effect."

[5] Under that interpretation, although a gunshot injury itself would not fall under PIP, if the gunshot injury caused the driver to lose control of the motor vehicle and an ensuing collision caused new injuries, those new injuries would be covered, because they would result directly from the collision. A slightly more expansive version of this interpretation would permit recovery where the vehicle caused the gun to discharge, such as when the vehicle hit a pothole.

the wording of the statute to cover injuries that result *indirectly* from the use of a motor vehicle, as well as those that result directly from such use. The text alone provides no clear indication of which interpretation the legislature intended.

Defendant opposes the latter construction of the term "resulting," because it would permit coverage for gunshot injuries that occur only as an indirect consequence or effect of the actual operation of the vehicle. Based on the terms used by the legislature, we are not persuaded that defendant's narrower construction unambiguously is the only plausible one. The legislature used the term "resulting" by itself and did not modify that term with the adjective "direct" or any similar limiting term. If the legislature desires to restrict the scope of coverage that the statute contemplates, it does not lack the linguistic tools necessary to achieve that outcome.

Defendant also argues that context supports its narrow interpretation. Context includes former versions of the same statute. *Owens v. Maass*, 323 Or 430, 435, 918 P2d 808 (1996). ORS 742.520 originally was codified as ORS 743.800. Or Laws 1971, ch 523, § 2.[6] That statute provided coverage to insured persons "injured *in* a motor vehicle accident." (Emphasis added.) Defendant argues that the original PIP coverage was limited to injuries caused by, and during, a motor vehicle accident. Consequently, defendant argues that the present wording of the statute similarly should be interpreted to cover only injuries caused by, and during, a motor vehicle accident.

Assuming that defendant is correct, and that the 1971 provision limited PIP coverage to injuries caused by, and during, a motor vehicle accident, in our view, that assumption cuts against defendant's proposed interpretation of the present PIP statute. In 1981, the legislature removed the reference in *former* ORS 743.800 to injuries received *in* a motor vehicle *accident* and replaced it with a reference to injuries *resulting from the use* of a motor vehicle.[7] That wording is broader in scope than the original wording. At present,

---

[6] *Former* ORS 743.800 was renumbered as ORS 742.520 in 1989.

[7] The amended wording provided coverage for injuries "resulting from the use or maintenance of any motor vehicle." That wording was amended further in 1991

there is neither an express requirement that an injury occur as a result of a motor vehicle *accident* nor an express requirement that the injury occur *in* an accident. Because the present incarnation of ORS 742.520 appears to be less limiting, if anything, than was its predecessor, the changes arguably provide more support for plaintiff's interpretation than for that offered by defendant.[8] Because we are unable to discern an unambiguous meaning for the above-mentioned statutory terms from text and context, we turn to legislative history.

There is no legislative history concerning the 1981 adoption of the phrase "resulting from the use or maintenance of any motor vehicle" in ORS 742.520 that sheds light on this inquiry. Therefore, we turn to maxims of statutory construction.

Some maxims of statutory construction are found in case law, and others are dictated by statute. *PGE*, 317 Or at 612. In this case, we are assisted by two statutes in the Insurance Code that govern the PIP statutes. ORS 731.008 provides that "the Insurance Code is for the protection of the insurance-buying public." ORS 731.016 provides that "[t]he Insurance Code *shall be liberally construed*" to further that purpose. (Emphasis added.) *See Pierce v. Allstate Ins. Co.*, 316 Or 31, 38-39, 848 P2d 1197 (1993) (acknowledging statutory rule of "liberal construction" as a general maxim of statutory construction in insurance cases).

■ In applying those statutes to this case, we interpret the phrase "resulting from the use * * * of any motor vehicle" liberally in favor of protecting the insured. Construing that

_____

to include the term "occupancy," and ORS 742.520 now provides coverage for injuries resulting from "the use, maintenance or occupancy" of a motor vehicle.

[8] Defendant argues that three other PIP provisions, ORS 742.534, 742.536, and 743.538, support its interpretation, because they pertain to injuries sustained "in a motor vehicle accident." However, the legislature has not amended those provisions since their creation in 1971 and, thus, they merely reflect a consistency with the wording of ORS 742.520's predecessor, *former* ORS 743.800. They do not provide assistance in construing what the legislature intended when it changed the wording of ORS 742.520 in 1981. Defendant makes a similar argument with respect to ORS 742.526, which provides primary PIP coverage to an insured person injured "while occupying a motor vehicle." Like the other three statutes, however, the legislature has not amended ORS 742.526 since its creation in 1971.

phrase in that way supports plaintiff's proposed interpretation. Thus, our consideration of statutory text, context, legislative history, and pertinent maxims of statutory construction cumulatively leads us to hold that PIP coverage extends to gunshot injuries that result from the use of a motor vehicle.

We are left to decide whether, in the light of the circumstances in this case, plaintiff's gunshot injury resulted from the use of a motor vehicle.

The foregoing analysis makes clear that a person injured by a gunshot while driving a motor vehicle—such as where a driver (or passenger) is shot by a sniper—is injured as a result of the use of a motor vehicle. However, in this case, the insured was injured after he had parked and gotten out of the car.

Plaintiff argues that his gunshot injury resulted from the use of his car, because Henderson effectively took over the use of plaintiff's vehicle by coercion, ordered him to get out, and shot him moments after he left the vehicle. Plaintiff argues that the temporal and spatial distance between that use and his gunshot injury are insufficient to prevent the injury from "resulting from" that use. We agree. Under these facts, we conclude that plaintiff's injury arose as a consequence of the carjacking event that involved the "use" of the vehicle. Therefore, plaintiff's gunshot injury resulted from the use of a motor vehicle.

The decision of the Court of Appeals and the judgment of the circuit court are reversed. The case is remanded to the circuit court for further proceedings.

**CARSON, C. J.,** dissenting.

Because I cannot agree that plaintiff's injury resulted from the use of a motor vehicle, I respectfully dissent.

The majority concludes that, under ORS 742.520(2), PIP coverage is not limited to injuries caused in an automobile accident. I agree. The majority also notes that the carjacking in this case commenced while plaintiff was using his vehicle. That is true, as well. It does not follow, however, that

plaintiff's injury *resulted* from the *use* of his vehicle. Neither plaintiff nor Henderson was in the vehicle when Henderson shot plaintiff. More importantly, neither plaintiff nor Henderson was using the vehicle, as that term ordinarily would be understood, when plaintiff was shot.

The majority's analysis is flawed in that it essentially treats any injury that might follow a carjacking as an injury that results from the use of a motor vehicle. As demonstrated by this case, that approach, in effect, fashions a rule whereby the availability of PIP benefits to an insured is dependent upon the mental state of the criminal perpetrator. Apparently, under the majority's rule, if the injury-causing perpetrator has the intent to steal (to "use") the insured's vehicle, any subsequent injury to the insured is within PIP coverage. Presumably, if the perpetrator had an intent other than theft of the insured's vehicle (theft of equipment or robbery of the insured, for example), in the circumstances of this case, no coverage would exist. Reliance upon the intent of the perpetrator introduces a completely alien element into vehicle insurance coverage. In my view, this case perfectly illustrates the principle of *post hoc ergo propter hoc*: If the injury here indeed resulted from the use of a motor vehicle, what other future injury in such a context would not?

Under the facts of this case, the nexus between plaintiff's injury and the use of his vehicle simply is too attenuated to support the conclusion that plaintiff's injury resulted from the use of a motor vehicle under ORS 742.520(2). Accordingly, I would affirm the decision of the Court of Appeals.

Gillette, J., and Graber, J., join in this dissenting opinion.