176 P.3d 415 (2008)
217 Or. App. 454
Lynn TAKATA, PlaintiffRespondent,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign company, DefendantAppellant.
No. 050808108; A133661.
Court of Appeals of Oregon.
Argued and Submitted August 17, 2007.
Decided January 23, 2008.
R. Daniel Lindahl, Portland, argued the cause for appellant. With him on the briefs were John R. Bachofner and Bullivant Houser Bailey, PC.
Karl G. Anuta, Portland, argued the cause for respondent. With him on the brief was David S. Foster.
Before HASELTON, Presiding Judge, and ARMSTRONG and ROSENBLUM, Judges.
HASELTON, P.J.
Defendant, State Farm Mutual Automobile Insurance Company, appeals from a judgment, following the allowance of summary judgment, in an insurance coverage dispute. The trial court determined that defendant was liable, under an auto insurance policy, for medical expenses and lost earnings that plaintiff incurred as a result of being struck by a bicycle as she crossed a road from her car to her residence. Defendant contends that, in allowing plaintiff's motion for summary judgment and denying its cross-motion, the trial court erroneously determined that plaintiffs injuries "result[ed] * * * from the use" of her vehicle, ORS 742.520(2)(a). The parties also dispute whether plaintiff was alternatively entitled to coverage because her injuries resulted from her "occupancy" of the vehicle. Id. Applying the analyses prescribed in Carrigan v. State Farm Mutual Auto. Ins. Co., 326 Or. 97, 949 *416 P.2d 705 (1997), and Marcilionis v. Farmers Ins. Co., 318 Or. 640, 871 P.2d 470 (1994), we reverse.
The material facts are undisputedand, indeed, stipulated; On May 5, 2005, the date of the accident, plaintiff was a named insured under a motor vehicle policy issued by defendant. The insurance policy contained terms and conditions for personal injury protection ("PIP") coverage that were no less favorable than, and consistent with, those provided in ORS 742.520.[1] As is relevant in this case, ORS 742.520(2) provides, in part:
"Personal injury protection benefits apply to a person's injury * * * resulting:
"(a) * * * from the use, occupancy or maintenance of any motor vehicle[.]"
On the evening of May 5, plaintiff had just arrived home from work and parked her car on the side of a two-lane road, Broadway Street, across the street from her house. After shutting off the car and setting the parking brake, plaintiff removed a load of work-related items from the back seat while leaving other work-related items and her purse or tote bag in the carand locked the car. Plaintiff then crossed the street, descended a set of stairs to her home, and opened the front door. Putting down the load she had taken from the car, plaintiff put her dog on its leash and took it with her back up the stairs and then across the street to her car.
Plaintiff unlocked the doors and moved some of her personal items from the front seat to the hatchback of the car. Plaintiff "assessed" other items she would need to unload, intending to come back later, but she did not take anything from the car, or put anything into the car, at that time. Plaintiff then closed and locked the car again. She turned and began to cross the street back to her house. When plaintiff was approximately three-quarters of the way across the two-lane road, she was struck by a cyclist riding down the hill. As a result of the collision, plaintiff was injured.
After the accident, plaintiff sought to recover her medical expenses and lost income, and filed a claim for PIP benefits under her automobile insurance policy with defendant. Defendant denied the claim on the basis that the accident was not the result of plaintiffs "use" or "occupancy" of her car and, thus, fell outside of the coverage prescribed in ORS 742.520(2).
Plaintiff then brought this action, seeking a judgment obligating defendant to pay the claim pursuant to the PIP coverage provided by statute. The parties stipulated to the facts in the case, agreeing that insurance coverage hinged on whether plaintiff's injuries resulted from her "use" or "occupancy" of the car, for purposes of ORS 742.520(2). Both sides moved for summary judgment. The trial court concluded that plaintiffs injuries had resulted from her use of the car:
"Th[e] facts show that the injury resulted from the use of the vehicle; plaintiff's injury was a consequence resulting from plaintiffs use of the vehicle to transport and store items. It is immaterial that plaintiff had let the dog relieve itself on the way back to the car, or that she had the dog with her at the car, or that she might have continued to take the dog on a walk. It is also immaterial that plaintiff placed no items in the car or removed any items from the car upon her return, or whether she intended to return to the car again; her moving of the bag from the front seat to the hatchback was sufficient to constitute use of the vehicle, especially considering the preceding unloading of certain items from the vehicle."
Consequently, the court granted summary judgment for plaintiff, and denied defendant's cross-motion, without deciding whether plaintiff's injury alternatively resulted from her "occupancy" of the vehicle.
On appeal, the issue is whether plaintiff was injured as a result of either her "use" or her "occupancy" of her car. As this is a case that hinges on the meaning of ORS *417 742.520(2), we begin our analysis with the text and context of the statutory language. PGE v. Bureau of Labor and Industries, 317 Or. 606, 859 P.2d 1143 (1993). We begin, as do the parties, with the question of "use."
ORS 742.520(2) provides PIP coverage for injuries "resulting * * * from the use * * * of any motor vehicle." Although the statute does not define "resulting" or "use," the Supreme Court has analyzed and construed that statutory text in Carrigan, 326 Or. 97, 949 P.2d 705. That construction represents an "authoritative interpretation of the statute," which controls our analysis. Mastriano v. Board of Parole, 342 Or. 684, 693, 159 P.3d 1151 (2007).
In Carrigan, the insured car owner sought to recover PIP benefits for injuries he suffered as a result of a carjacking. 326 Or. at 99-100, 949 P.2d 705. There, as the insured was leaving his work, a stranger approached him, asking for a ride. Id. at 99, 949 P.2d 705. After the stranger entered the insured's car, he brandished a gun, and told the insured to take him to a particular destination. Id. Once there, the stranger told the insured to get out of the car, and, after failing to force the insured into the trunk of the car, the stranger told him to lie on the ground. Fearing he would be shot, the insured began to back away from the car. Although the insured managed to withdraw some 30 feet from the car, the stranger shot him, hitting him in the chest. Id. at 100, 949 P.2d 705.
The insured survived, but suffered significant injuries from the gunshot, and sought to collect PIP benefits under his auto insurance policy. The insurer denied the insured's claims. The trial court found for the insurer; holding that, because the insured's injury occurred from a gunshot that had not directly resulted from the insured's use of the car, ORS 742.520(2) did not provide coverage. Id. We affirmed, explaining that the "resulting from" language required "a more exacting test of direct causation, uninterrupted by an intervening act that is wholly disassociated from and independent of the vehicle's use." Carrigan v. State Farm Mutual Auto. Ins. Co., 140 Or.App. 359, 365, 914 P.2d 1088 (1996) (internal quotation marks omitted).
The Supreme Court reversed. It began its analysis by noting that there were at least two possible constructions of the statutory language. The first interpretation, which we had applied, "would require that the gunshot injury be the direct consequence of the use of the vehicle." Carrigan 326 Or. at 102, 949 P.2d 705. That interpretation would provide PIP coverage only for "injuries that are inflicted directly by the use of a motor vehicle and during the operation of the vehicle." Id. (emphasis in original). By contrast, the second interpretation
"would permit coverage if the gunshot injury is the consequence or effect of any use of the vehicle. Under that interpretation, a gunshot injury results from the use of the vehicle if the injury is a consequence or effect to which any use of the vehicle leads. The injury in this case was inflicted by a gunshot that arose in the course of a carjacking. That injury may be viewed as a consequence or effect of the use of plaintiff's car as the object of a carjacking.
"* * * [That] interpretation construes the wording of the statute to cover injuries that result indirectly from the use of a motor vehicle, as well as those that result directly from such use."
Id. at 102-03, 949 P.2d 705 (emphasis in original). Because both interpretations were plausible, the court reviewed the legislative history, which did not help to discern the legislature's intent. Id. at 104, 949 P.2d 705.
Consigned to PGE's "third level," the Supreme Court turned, finally, to maxims of statutory construction:
"Some maxims of statutory construction are found in case law, and others are dictated by statute. PGE, 317 Or. at 612, 859 P.2d 1143. In this case, we are assisted by two statutes in the Insurance Code that govern the PIP statutes. ORS 731.008 provides that the Insurance Code is for the protection of the insurance-buying public.' ORS 731.016 provides that `[t]he Insurance Code shall be liberally construed' to further that purpose. (Emphasis added.) See Pierce v. Allstate Ins. Co., 316 Or. 31, 38-39, 848 P.2d 1197 (1993) *418 (acknowledging statutory rule of `liberal construction' as a general maxim of statutory construction in insurance cases)."
Carrigan, 326 Or. at 104, 949 P.2d 705. Applying those maxims, the court concluded that the plaintiff's proposed broader construction of "resulting from the use * * * of any motor vehicle" comported with the maxim that the Insurance Code is to be construed "liberally in favor of protecting the insured." Id.
The Supreme Court then determined that, under that construction, "PIP coverage extends to gunshot injuries that result from the use of a motor vehicle." Id. at 105, 949 P.2d 705. More particularly, the court concluded that the plaintiffs injuries in Carrigan were covered because, in the circumstances there, they "resulted from the use of a motor vehicle." Id. In so holding, the court explained:
"The foregoing analysis makes clear that a person injured by a gunshot while driving a motor vehiclesuch as where a driver (or passenger) is shot by a sniperis injured as a result of the use of a motor vehicle. However, in this case, the insured was injured after he had parked and gotten out of the car.
"Plaintiff argues that his gunshot injury resulted from the use of his car, because [the carjacker] effectively took over the use of plaintiffs vehicle by coercion, ordered him to get out, and shot him moments after he left the vehicle. Plaintiff argues that the temporal and spatial distance between that use and his gunshot injury are insufficient to prevent the injury from `resulting from' that use. We agree. Under these facts, we conclude that plaintiffs injury arose as a consequence of the carjacking event that involved the `use' of the vehicle. Therefore, plaintiffs gunshot injury resulted from the use of a motor vehicle."
Id. (emphasis added).[2]
We understand the Supreme Court in Carrigan to have made a fundamental distinction between two circumstances. First, if a person is injured while using a motor vehicle, that injury will be deemed to have "result[ed] * * * from the use" of the motor vehicle. That is the significance of the court's hypothetical regarding the "driver (or passenger) [who] is shot by a sniper" while driving in a motor vehicle. 326 Or. at 105, 949 P.2d 705.[3] Second, even if the injured person was not using a motor vehicle at the time he or she was injured, "resulting from" coverage will nevertheless apply if the injury "is the consequence or effect of any use of the vehicle." Id. at 102, 949 P.2d 705. That consequential causation construct pertained to the circumstances in Carrigan itself.
In Carrigan, the operative "use" was the carjacking. As the Supreme Court observed in summarizing the plaintiffs position, which it ultimately endorsed: "[The plaintiff's] injury may be viewed as a consequence or effect of the use of [the] plaintiffs car as the object of a carjacking." Id. at 102, 949 P.2d 705 (emphasis added). Further, the court later adopted the plaintiff's argument that the carjacker "effectively took over the use of [the] plaintiffs vehicle" and that the nexus between "that use" and the gunshot injury was sufficient to establish that the latter "resulted from" the former. Id. at 105, 949 P.2d 705.
Thus, in Carrigan, the injurious event was the consequential product of the operative use of the vehicle. The shooting was a consequence of the carjacking.
Here, the requisite causal nexus between use and injury was lacking. Plaintiff posits two possible predicate uses: Plaintiffs *419 use of her car to drive home, which ended when she parked her car; and plaintiffs use of her vehicle to carry and store items, which, at least arguably, encompassed plaintiff's return to her car and ended seconds before she was struck by the cyclist. To be sure, in pure "but for" causation terms, plaintiff would not have been recrossing the streetand, thus, would not have been hit by the cyclistbut for either or both of those uses.
But Carrigan requires more than a pure "but for" connection.[4] Rather, it requires a consequential nexus between the use and the injurious eventagain, bluntly, carjackings sometimes result in people being shot. See 326 Or. at 102, 105, 949 P.2d 705. Here, the nature of plaintiff's use of her carfor driving or for carriage and storage purposes had no consequential relationship to the injuryproducing force, viz., the speeding cyclist. The cyclist was going to be there regardless of plaintiff's use of the carand, other than in a pure "but for" sense, nothing about plaintiffs use of the car enhanced the likelihood that she would suffer an injury because of being struck by a cyclist.
We thus conclude that the trial court erred in determining that, for purposes of PIP coverage, plaintiff's injury "result[ed] * * from the use * * * of any motor vehicle." ORS 742.520(2)(a).
We turn, then, to plaintiffs alternative argument regarding "occupancy" of the vehicle, ORS 742.520(2)(a), which the trial court did not reach. We conclude that Marcilionis is conclusive and preclusive of plaintiffs argument in that respect.
The trial court erred in granting plaintiff's motion for summary judgment and in denying defendant's motion for summary judgment.
Reversed.
NOTES
[1] As we have explained, "PIP benefits are creatures of statute and of contractual insurance polices; where the parties do not contest the terms of a particular policy, we look only to the statutory requirements for automobile insurance policies." Bell v. Morales, 207 Or.App. 326, 331, 142 P.3d 76 (2006). As the parties do not dispute the terms of the insurance policy, we look only to the statute to determine the extent of coverage.
[2] Three members of the Supreme Court dissented in Carrigan. See 326 Or. at 105, 949 P.2d 705 (Carson, C.J., dissenting). The dissent agreed that the carjacking began while the plaintiff was using his car. The dissent, however, argued that it did "not follow * * * that [the] plaintiff's injury resulted from the use of his vehicle." Id. at 105-06, 949 P.2d 705. The dissent noted that "neither [the] plaintiff nor [the assailant] was using the vehicle, as that term ordinarily would be understood, when plaintiff was shot." Id. at 106, 949 P.2d 705.
[3] By parity of reasoning with that hypothetical, there would be PIP coverage for a driver or passenger injured in transit by falling rocks or lightning bolts.
[4] Indeed, under such a pure "but for" formulation of "resulting from" coverage, a person who was injured after slipping in the shower would be entitled to PIP benefits if, but for driving home that day, he or she would not have had time to bathe. We do not understand the Supreme Court in Carrigan to have gone so far.