*86 WALTERS, J.,
dissenting.
If the terms of ORS 742.524(l)(a) (2007) unambiguously precluded payment of transportation expenses, then this court would have no choice but to interpret that statute to deny injured motorists access to necessary medical care. However, as the majority acknowledges, the text of ORS 742.524(l)(a) is not so clearly limited; it can be read to require payment of such expenses. The statute’s text requires payment of “[a] 11 reasonable and necessary expenses of medical *** services,” ORS 742.524(l)(a), and the word “expenses” means “a cost[] to secure a benefit or bring about a result,” 361 Or at 70. Because transportation costs may be costs incurred to secure the benefit of medical services, the statute’s text may be understood to require payment of such costs, and its context and legislative history demonstrate that that is, in fact, what the legislature intended. As context, the legislature has instructed that the statute was enacted for “the protection of the insurance-buying public,” ORS 731.008, and that it must be “liberally construed,” ORS 731.016. The statute’s legislative history indicates that the legislature intended to require insurers to promptly pay their insureds’ economic losses to increase insureds’ chances for full recovery and to avoid the need for contentious third-party litigation.
Had the majority given effect to the statute’s text, context, and legislative history, and followed the lead of all courts that have considered the question, the majority would have interpreted ORS 742.524(l)(a) to require insurers to pay transportation costs. Instead, the majority chooses a unique interpretation of ORS 742.524(l)(a) that requires insurers to pay other costs incurred to secure the benefit of medical services—costs for medication, supplies, and equipment—but not transportation costs. That interpretation departs from law and logic and leaves those who do not have the means to travel to secure necessary medical care without the same chances for full recovery and opportunity to avoid litigation that others have. That is wrong, and I dissent.
I begin by explaining in more detail the reasoning that this court would engage in if it were to follow its *87 ordinary paradigm and interpret ORS 742.524(l)(a) to require payment of transportation expenses. I then show how far the majority reaches—disregarding the meaning of the word “expenses,” relying on an illogical meaning of the word “of” refusing to interpret the statute in accordance with legislative direction, and turning away from the statute’s legislative history—to deny insureds the benefit of the insurance policies that they are required to purchase.
If this court were to follow settled law, it would focus, first, on the statute’s text and give ORS 742.524(l)(a)[1] its plain meaning. PGE v. Bureau of Labor and Industries, 317 Or 606, 610, 859 P2d 1143 (1993). ORS 742.524(l)(a) requires payment of “[a] 11” reasonable and necessary “expenses” of medical services. Giving the word “expenses” its ordinary meaning, ORS 742.524(l)(a) requires payment of costs “expended to secure a benefit relating to work that is performed by another, when that work involves the practice of medicine.” Dowell v. Oregon Mutual Ins. Co., 268 Or App 672, 677, 343 P3d 283 (2015).[2] Because transportation may be necessary to secure a physician’s treatment, transportation costs come within those statutory terms: They are costs expended to secure a medical benefit. The legislature did not intend to cover only some of the reasonable and necessary *88 costs expended to secure medical benefits; it intended to cover “[a]ll” such costs. ORS 742.524(1)(a).
Having given the statute’s text its ordinary meaning, this court then would turn, for context, to other statutes that, like ORS 742.524(1) (a), are part of the Insurance Code. See Northwest Natural Gas Co. v. City of Gresham, 359 Or 309, 322, 374 P3d 829 (2016) (quoting PGE, 317 Or at 611) (“The context of the statute includes ‘other provisions of the same statute and other related statutes.’”). ORS 731.008 provides that “the Insurance Code is for the protection of the insurance-buying public,” and ORS 731.016 provides that the Insurance Code “shall be liberally construed.”
Oregon law requires that all drivers obtain liability insurance and purchase first-party PIP insurance. ORS 806.080. Therefore, drivers who pay premiums for that insurance are members of the insurance-buying public. Drivers who suffer injuries may have to travel long distances to obtain specialized care. In most respects, Oregon is a rural state, and Portland is a hub for specialized medical care. See Horton v. OHSU, 359 Or 168, 171, 376 P3d 998 (2016) (pediatric surgery specialist performed operation to remove mass on plaintiffs liver); Ackerman v. OHSU Medical Group, 233 Or App 511, 514, 227 P3d 744 (2010) (plaintiff underwent surgery at OHSU to repair injured disc in neck); Clarke v. OHSU, 343 Or 581, 586, 175 P3d 418, 421 (2007) (plaintiff underwent surgery at OHSU to repair congenital heart defect). Giving effect to the statute’s context and following the legislature’s instructions, this court would construe ORS 742.524(l)(a) liberally, so that those who pay PIP premiums and who need specialized care receive payment for all reasonable and necessary costs that they incur to secure medical services, including transportation costs. This court followed exactly that method of analysis in Gearhart v. PUC, 356 Or 216, 244, 339 P3d 904 (2014) (reading related statutes together and following legislature’s direction that laws administered by Public Utility Commission should be “liberally construed”), and State v. Walker, 356 Or 4, 17, 333 P3d 316 (2014) (considering instruction that ORICO statutes “shall by liberally construed” in its construction of those statutes).
*89 Having considered relevant statutory context, this court also would look to the legislative history of ORS 742.524(l)(a) and would find that it supports an interpretation of the statute that requires payment of transportation costs incurred to secure medical services. The legislative history indicates that the legislature required drivers to purchase first-party PIP insurance to provide speedy payment of economic losses to increase injured persons’ chances of recovery and to reduce third-party litigation. In a portion of that legislative history that the majority quotes, but only selectively, Dowell, 361 Or at 78-79, Commissioner Bateson explained that there was a need for first-party insurance because
“speed of payment of a claim is often as important as whether or not it is paid at all. Prolonged adjustment procedures during which the injured party is without wages or wage replacement, during which hospital, doctor or repair bills go unpaid and during which needed rehabilitation is delayed, frequently damage the claimant’s family, his credit rating and his chance for full recovery. Delay in settlement may also engender in the claimant an attitude toward the insurer which will be uncooperative, even vengeful, and may lead to a larger ultimate claim or settlement than would have been the case if prompt payment were made.
Exhibit E, Subcommittee on Financial Affairs, House State and Federal Affairs Committee, HB 1300, Feb 24, 1971 (accompanying statement of Insurance Commissioner Cornelius Bateson) (emphases added). Commissioner Bateson further explained’
“[t]hat, despite the uninsured motorists coverage which is required in every auto liability insurance policy issued in Oregon, there are still many people whose coverage for economic loss sustained in auto accidents is less than adequate.”
Id. (emphasis added).
If this court were following settled principles of statutory construction, the court would interpret ORS 742.524 (l)(a) to have a meaning consistent with the legislature’s articulated purposes. See State v. Johnson, 339 Or 69, 81 *90 n 7, 116 P3d 879 (2005) (discerning legislature’s “clear overall purpose in enacting” the statute). In Commissioner Bateson’s words, paying an injured person’s economic loss would increase the person’s chance for full recovery and reduce the need for third-party litigation. To the contrary, precluding payment of transportation expenses would defeat the legislature’s purposes. If an injured person did not have the means to travel for specialized care, not only would bills go unpaid, the person would not receive necessary treatment, reducing the person’s chances for full recovery. And, even if the injured person did have the means to travel, the only way that the person could recover transportation expenses would be to bring a third-party action, defeating the legislature’s purpose of avoiding the need for such litigation. The legislature’s purposes explain why it chose to require payment of “[a\ll” reasonable and necessary “expenses of medical *** services.” ORS 742.524(l)(a) (emphasis added).
Finally, if this court were to follow settled law, it also would look to the reasoning of other courts for guidance. See, e.g., Priest v. Pearce, 314 Or 411, 419, 840 P2d 65 (1992) (looking to decisions of other state courts interpreting parallel constitutional provisions for guidance). In doing so, this court would find that all of the courts that have considered the matter have interpreted their PIP statutes to require payment of transportation costs. See Anderson et al, 12 Couch on Insurance § 171.64 (3d ed 1984) (“Transportation expenses incurred traveling to and from medical providers for treatment of covered injuries arising out of an automobile accident are compensable under a no-fault or Personal Injury Protection (PIP) insurance policy!,] because these transportation costs are incurred in connection with, and are causally related to, reasonable and necessary medical services.”); Arthur Larson & Lex K. Larson, 5 Larson’s Workers’ Compensation Law § 94.03, 94-98 (2012) (“Transportation costs necessarily incurred in connection with medical treatment are compensable, even if the act speaks only of medical and hospital services.”).
For instance, in Malu v. Security Nat’l Ins. Co., 898 So 2d 69 (Fla 2005), the Florida Supreme Court held that its similarly worded PIP statute required payment of *91 transportation expenses.[3] That court previously had held that “the language of the PIP statute should be interpreted liberally to effectuate the legislative purpose of providing broad PIP coverage for Florida motorists.” Id. at 76 (citations omitted). In Malu, the court determined that “[interpreting the statutory language to include, such travel expenses [was] consistent with effectuating this legislative purpose.” Id.; see also Allstate Ins. Co. v. Smith, 902 P2d 1386 (Colo 1995) (relying on remedial purpose of statute in favor of insured motorists).
Had the majority been guided by that legal authority, it, too, would have required payment of transportation expenses necessarily incurred in connection with medical treatment. Instead, however, the majority reads the phrase “expenses of medical *** services,” ORS 742.524(l)(a), to require an insurer to pay the cost of medication, supplies, and equipment that healthcare providers prescribe, but not the cost of transportation. Dowell, 361 Or at 81. As I will explain, that conclusion does not follow from the statute’s text, context, or legislative history.
The majority begins, as it must, with the statute’s text and correctly recognizes that the word “expense” means “something that is expended, a cost, to secure a benefit or bring about a result.”Id. at 70. However, instead of grappling with the fact that transportation can be “a cost[] to secure a benefit or bring about a result”—medical care—the majority interprets the phrase “expenses of medical * * * services” to mean “costs that originate with, or that are actuated by, the rendered medical treatment or the physician’s performance of work.” Id. at 77. The majority then reasons that costs for items such as medication, supplies, and equipment qualify, but costs for transportation do not. Id.
In arriving at its interpretation of the phrase “expenses of medical *** services,” the majority commits *92 two errors. The majority’s first error is in defining the word “expenses” to mean “a cost[] to secure a benefit” but then reading that word and its meaning out of its interpretation of the phrase. That error violates the tenet of statutory construction that requires that the court give meaning to all the words that the legislature uses. See ORS 174.010 (“[W]here there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.”); see also Force v. Dept. of Rev., 350 Or 179, 190, 252 P3d 306 (2011) (“Statutory provisions, however, must be construed, if possible, in a manner that ‘will give effect to all’ of them.”).
The majority’s second error is in transferring its focus to the meaning of the word “of’ and the definition that it ascribes to that word. Instead of giving the word “of’ the meaning adopted by the parties and the Court of Appeals— “relating to”—the majority selects other dictionary definitions to conclude that it means “originate with” or “actuated by.” Dowell, 361 Or at 77. The majority first says that “of’ means “ from as the place of birth, production, or distribution : having as its base of operation, point of initiation, or source of issuance or derivation,” id. at 70 (emphasis added), as used in the phrase “[of] or relating to Italy,” Webster’s Third New Int’l Dictionary 1565 (unabridged ed 2002). Then, the majority says, even if that locational meaning is not correct, the word “of’ also can have two alternative meanings: It can be used as a function word to (1) “indicate the cause, motive, or reason by which a person or thing is actuated or impelled,” as in the phrase “die [of] shame”; or (2) “indicate a quality or possession characterizing or distinguishing a subject,” as in the phrase “men [of] goodwill.” Id. at 1565; 361 Or at 70. The majority then selects words from the locational meaning of the word “of’ and one of the alternative definitions that it suggests and decides that the word “of’ means “originate with” or “actuated by.” 361 Or at 77. Thus, the majority interprets the phrase “expenses of medical * * * services” to mean costs that “originate with” or are “actuated by” medical services. Id.
The meaning that the majority gives to the word “of’ cannot be the meaning that the legislature intended. First, the legislature used the word “of’ in conjunction with the preceding word “expenses,” which, as the majority recognizes, *93 means costs to secure a benefit. Id. at 70. Therefore, the legislature must have used the word “of’ to describe the nature of the costs that an insured incurs to secure insurance benefits: Those costs not only must be costs incurred to secure some benefit; they must be costs to secure the benefit of the listed medical services. That understanding of the meaning of the word “of’ is consistent with the definition that the parties and the Court of Appeals deem appropriate—“related to”—and with the second alternative definition that the majority posits—that the costs that an insured incurs must have qualities that distinguish them from other costs. In other words, the costs “of’ services must be costs related to the listed services or incurred to secure the listed services. In contrast, however, the legislature could not have intended the word “of’ to have the meaning ascribed by the majority. The legislature knew that the reason that a motorist incurs costs is that the motorist has suffered injuries in a motor vehicle accident; the motorist’s motive for incurring costs is to obtain treatment of those injuries,, and those injuries are the originating source of the costs. The legislature did not use the word “of’ as a function word to refer to the motive that impels an insured to incur costs.
Second, the legislature expressly required payment of at least one listed expense that does not “originate with” and that is not “actuated by” medical services. ORS 742.524(l)(a) requires payment of expenses of “ambulance” services, and such expenses precede and do not “originate with” medical treatment. Ambulance costs also are not “actuated by” medical treatment. If the legislature had intended the word “of’ to mean “originating] with” or “actuated by” medical treatment, that intent would be at odds with its requirement that insurers compensate insureds for ambulance expenses.
Third, the conclusion that the legislature did not use “of’ to mean “originate with” or “actuated by” is clear from the fact that the legislature used the word “of’ interchangeably with the word “for”; the word “for” does not have those meanings. As originally enacted, ORS 742.524(l)(a) used the word “for” rather than “of’ in the phrase “reasonable and necessary expenses for” medical services. Or Laws 1971, ch 523, § 2. As the majority recognizes, that change in use “does not appear to have been intended as meaningful.” *94 Dowell, 361 Or at 78. The word “for” is defined to mean, among other things, “as regards : in respect to : concerning.” Webster’s 886. It also is defined to mean “so as to secure a result.” Id. It is not defined to mean “originate with” or “actuated by.” To have used the words “of’ and “for” interchangeably, the legislature must have understood those words to have a common meaning, and that common meaning can only be “relating to” or “to secure a result.”[4]
Fourth, even if the word “of’ could be used to mean “originate with,” or “actuated by,” the statute would require payment of transportation costs when a physician directs an injured person to obtain specialized care at a distant location. When the majority interprets the word “of’ to include costs “prescribed” by a physician, such as medications, but not to include transportation costs, presumably because they are not “prescribed,” the majority adds a requirement that the statute does not include and violates another tenet of statutory construction. See ORS 174.010 (“In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]”).
When the majority turns to statutory context to determine whether it supports the textual meaning that the majority posits, the majority again commits error. As noted, the legislature directs that “the Insurance Code is for the protection of the insurance-buying public,” ORS 731.008, and “shall be liberally construed,” ORS 731.016. Although the majority agrees that those statutes function as context for its interpretation of ORS 742.524(l)(a), it refuses to “employ” them. Dowell, 361 Or at 73. That is not what this court has done in the past. For instance, in Walker, a case that this court decided in 2014, this court applied the legislative instruction that the ORICO statutes “shall by liberally construed” in its analysis of the statute’s text and context. 356 Or at 17.
*95 The majority does not explain its departure from Walker. Instead, the majority addresses plaintiffs argument that a 1997 case, Carrigan v. State Farm Mutual Auto. Ins. Co., 326 Or 97, 104, 949 P2d 705 (1997), requires liberal construction of the PIP statutes. The majority observes that, in Corrigan, the court considered the legislature’s instruction only after it had considered the text, context, and legislative history of the statute at issue and found that the statute’s meaning remained unclear. Dowell, 361 Or at 73. Perhaps that was what the court did in Carrigan in 1997, but that was not what the court did in Walker in 2014. Moreover, Corrigan does not justify refusing to give the legislature’s instruction any consideration at all.
In this case, the majority not only fails to give effect to ORS 731.016 and ORS 731.008 as statutory context, it compounds its error by refusing to consider those statutes at any point in its analysis. If the majority intends to claim that the text, context, and legislative history of ORS 742.524(l)(a) so clearly compel a result that it can disregard the legislature’s interpretive direction, then it should explicitly stake out that claim.
The majority does not do so. Instead, the majority acknowledges that the text of the statute can be read in at least three different ways, Dowell, 361 Or at 70-71, and says that its context does no more than indicate “a problem” with plaintiffs reading of the statute, id. at 73-74.
Significantly, the majority does not draw support for its own unique interpretation of the statute from the statutory context on which it relies, nor could it. The “problem” that the majority identifies is that ORS 742.524(l)(a) mentions one kind of transportation expense (ambulance services) but not others, a reference that the majority claims casts doubt on plaintiffs interpretation. Id. That “problem” would, however, present the same difficulty for the majority’s interpretation as it does for plaintiffs. For instance, the statute mentions one type of medical service provider who provides one type of medical equipment—prosthetic service providers who provide prosthetic devices—but not other types of medical service providers who provide other items, such as pharmacists who provide medication. The *96 statute also specifically mentions certain service providers— medical, surgical, and dental service .providers—but does not mention other service providers—pharmacists, nurses, or optometrists.[5] Applying the majority’s logic, reference to certain specific service providers and the items that they provide would exclude payment for others. For instance, payment for both pharmacists and the medications that they provide would be excluded.
The majority does not, and cannot, claim that the statute’s context demonstrates, unambiguously, that its interpretation of ORS 742.524(l)(a) is the correct one. In fact, looking more closely at the “problem” to which the majority points demonstrates that the legislature intended to impose a general requirement that insurers pay all reasonable and necessary costs to secure what are generally thought of as medical services and also specifically listed some services that it considered medical in nature—surgical and dental services, for example—to make clear the breadth of its reference. In doing so, the legislature did not intend to exclude other services, such as pharmaceutical, nursing, or optometry services, or the costs necessary to secure the benefit of those services.
Turning to legislative history, the majority observes that the legislature did not discuss transportation expenses and reasons that that “does not indicate that the legislature was concerned with delayed payments to injured motorists for their transportation costs to receive medical care.” Id. at 80 (emphasis added). The majority cannot say what that silence does indicate because it knows full well that legislative silence is an unreliable indicator of legislative intent. See State v. Rainoldi, 351 Or 486, 492, 268 P3d 568 (2011) (noting that, because fact of legislative silence can give rise to competing inferences, it is generally not a dispositive indicator of intent).
The majority nevertheless concludes that “the legislative history is consistent with our reading of the phrase ‘expenses of medical *** services’ in ORS 742.524(1)(a) as including (1) the cost of professional services provided by *97 licensed or certified healthcare providers and (2) medications and medical supplies and equipment that they have prescribed for the injured motorists that they treat.” Dowell, 361 Or at 81 (emphasis added). How can that be so? The legislative history fails to include a discussion of the costs of medications, medical equipment, and the services of pharmacists and nurses. If legislative silence does not indicate that the legislature was concerned with payment of transportation expenses, it also does not indicate that the legislature was concerned with payment of the costs of medications, medical equipment, or the services of pharmacists or nurses.
The majority also makes reference to the legislature’s discussion of the cost of PIP benefits, but it is wrong to conclude that the legislature worded ORS 742.524(l)(a) as it did to limit payment of costs necessary to secure medical treatment. The legislative history demonstrates that the costs of providing payment for “[a] 11” reasonable and necessary “expenses for medical * * * services” were known to the legislature and did not concern it. Many companies already were selling, and drivers already were purchasing, first-party insurance to cover medical expenses; the significant added benefit in the PIP statutes was coverage for wage loss.[6] Furthermore, the method that the legislature chose to *98 contain medical costs was to require that they be reasonable and necessary, and to impose both monetary and durational caps. ORS 742.524(1)(a)-(e). An insurer is required to pay no more than $15,000 for aggregate medical expenses incurred within one year[7] after the date of the person’s injury.[8] ORS 742.524(l)(a). Interpreting that statute to require payment of an injured person’s transportation expenses would not increase the total benefits for which that person would be eligible.
Furthermore, if a concern with cost were to indicate an intent to preclude payment of transportation expenses, it would also indicate an intent to preclude payment for medication. The cost of medication is significant. See Centers for Disease Control and Prevention, Health Expenditures, http: II www.cdc.gov / nchs/fastats / health-expenditures.htm (Oct 7, 2016) (accessed Feb 14, 2017) (prescription drugs accounted for 9.8 percent of total United States health expenditures in 2014—$294 billion).
The majority does not claim or demonstrate that the text, context, and legislative history of ORS 742.524(1)(a) unambiguously demonstrate that it must be interpreted as the majority reasons—to require an insurer “to pay for healthcare bills and items that a physician or other healthcare provider prescribes for treatment, such as medications and medical supplies and equipment.” Dowell, 361 Or at 85. Therefore, even if only at the last step of its analysis, the majority should have returned to the legislature’s direction to interpret ORS 742.524(1) (a) liberally for the benefit of the insurance-buying public. Had it done so, the majority would have interpreted that statute to cover not only the cost of “prescribed” medication and equipment, but also to cover “[a] 11” reasonable and necessary costs to secure the benefit of medical treatment, including transportation costs.
*99 The majority’s failure to give ORS 742.524(1)(a) an interpretation that its words permit, that accords with legislative direction, and that fulfills its purposes may not be without remedy. Perhaps those in need will be able to seek, and caring physicians will take the time to write, prescriptions for transportation to secure specialized medical care. After all, there is no conceptual difference between a physician’s direction to obtain medication and a physician’s direction to obtain transportation. Or, perhaps, the legislature will take time from other pressing matters to expressly instruct insurers that “expenses of medical *** services” include the reasonable and necessary costs of transportation to procure those services. ORS 742.524(l)(a).
But even if a remedy exists, the majority’s failure sounds an alarm of injustice that extends beyond this case. The majority’s conclusion that those without access to medical care must forgo it or wait the time and bear the uncertainty that litigation entails and that PIP benefits were designed to avoid is not legally correct, and the means that the majority adopts to justify that end deviate from our legal norms. I dissent.
Baldwin and Brewer, JJ., join in this dissenting opinion.

 ORS 742.524(l)(a) requires the insurer to reimburse the insured for
“[a]ll reasonable and necessary expenses of medical, hospital, dental, surgical, ambulance and prosthetic services incurred within one year after the date of the person’s injury, but not more than $15,000 in the aggregate for all such expenses of the person.”

 The Court of Appeals arrived at that meaning by examining the dictionary definitions of the statutory terms:
“‘Expense’ may be defined as ‘something that is expended in order to secure a benefit or bring about a result!.]’ Webster’s Third New Int’l Dictionary 800 (unabridged ed 2002). ‘Of may be defined as ‘relating to : with reference to : as regards : ABOUT!.]’ Id. at 1565 (boldface in original). ‘Medical’ may be defined as ‘of, relating to, or concerned with physicians or with the practice of medicine often as distinguished from surgery!,]’ and ‘medicine’ may be defined as ‘the science and art dealing with the maintenance of health, and the prevention, alleviation, or cure of disease!.]’ Id. at 1402. ‘Service’ may be defined as ‘the performance of work commanded or paid for by another!.]’ Id. at 2075. Thus, the plain meaning of‘expenses of medical *** services’ may be construed as something that is expended to secure a benefit relating to work that is performed by another, when that work involves the practice of medicine (the maintenance of health, and the prevention, alleviation, or cure of disease).”
Dowell, 268 Or App at 676-77 (brackets in original).

 The Florida statute provided that the following medical expenses were compensable:
“Eighty percent of all reasonable expenses for medically necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and medically necessary ambulance, hospital, and nursing services.”
Fla Stat § 627.736(l)(a) (2003) (emphases added).

 The majority argues, in a footnote, that “for” can also mean “because of” or “on account of,” and that that meaning is consistent with the meaning that the majority ascribes. Dowell, 361 Or at 78 n 9. But an injured motorist incurs costs to secure a benefit because of or on account of the motorist’s injuries, not because of or on account of “medical services.”

 See ORS 677.060(7) (excluding pharmacy, nursing, and optometry services, among others, from regulation of medicine).

 In 1971, when the legislation at issue in this case was first enacted, Oregon drivers were not required to have liability insurance to ensure that they would he financially responsible for damages caused by their careless driving. Exhibit E, Subcommittee on Financial Affairs, House State and Federal Affairs Committee, HB 1300, Feb 24, 1971 (accompanying statement of Insurance Commissioner Cornelius Bateson). However, the 1971 legislative history indicates that many drivers nevertheless obtained liability insurance and had some coverage that protected them even if a third party was not at fault or was not financially responsible. Id. Oregon law required that liability insurance policies include coverage for damages caused by uninsured motorists, and the majority of policies issued in Oregon contained some form of “med-pay” coverage—payment of an insured’s medical expenses without regard to fault. Id. Few policies, if any, contained coverage for wage loss. Id. That was not satisfactory, in the eyes of the Insurance Commissioner, Cornelius Bateson. He told the legislature that the system “by which people protect themselves against financial loss due to auto accidents” was far from perfect, and, nationally, “[had] been subjected to close scrutiny and substantial criticism.” Subcommittee on Financial Affairs, House State and Federal Affairs Committee, Feb 24, 1971 (statement of Insurance Commissioner Cornelius Bateson).
In response to questions about increased premiums under the new law, Commissioner Bateson replied that the cost of coverage from a substandard insurance company insuring a high risk youthful driver with a “hot rod” car was *98 estimated to be an additional premium of $18 per year, while the cost for a driver with a good record would probably not exceed an additional $14 or $15 per year. Tape Recording, Senate Judiciary Committee, HB 1300, May 19, 1971, Tape 10, Side 2. Mr. Bateson also said that one company was selling coverage slightly more beneficial than the bill required for an additional premium of $7 per year. Id.

 The current version of the ORS 742.524(l)(a) (2015) provides that PIP benefits consist of “expenses of medical * * * services incurred within two years after the date of the person’s injury.”

 Originally, PIP benefits were capped at $3,000. Or Laws 1971, ch 523, § 2.